UNITED STATES of America, Appellee,

v.

Richard C. BROWN,
Defendant, Appellant.

No. 89–1280.

United States Court of Appeals,
First Circuit.

Heard Feb. 6, 1990.

Decided March 26, 1990.

Peter L. Murray, with whom Murray, Plumb & Murray, Portland, Me., was on brief for defendant, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., Portland, Me., with whom Richard S. Cohen, U.S. Atty., Augusta, Me., and Thomas L. Goodwin, Asst. U.S. Atty., were on brief for the U.S.

Before BREYER, ALDRICH and SELYA, Circuit Judges.

SELYA, Circuit Judge.

The sole issue in this case concerns the propriety of the district court's upward departure from the sentencing guidelines promulgated pursuant to the Sentencing Reform Act of 1984, as amended, 18 U.S. C.A. §§ 3551–3586 (West 1985 and Supp. 1988); 28 U.S.C.A. §§ 991–998 (West Supp.

1988). Discerning no illegitimation, we affirm.

I

Defendant-appellant Richard C. Brown pled guilty to a one-count indictment charging intentional and knowing receipt, and unlawful possession, of stolen mail in violation of 18 U.S.C. § 1708. The base offense level corresponding to the statute of conviction was 5. Pursuant to a nonbinding plea agreement, see Fed.R.Crim.P. 11(e)(1)(A), the government agreed that a two-point reduction for acceptance of responsibility would be appropriate, see U.S.S.G. § 3E1.1; see generally United States v. Royer, 895 F.2d 28 (1st Cir.1990), and that it would not seek imposition of a sentence in excess of the applicable guideline range.

The district court ordered a presentence investigation report (PSI Report). When compiled, the PSI Report recommended against adjusting the base offense level for acceptance of responsibility. Since Brown had been convicted on federal charges of theft and possession of stolen mail on two prior occasions, his participation in this third, similar, offense led the probation officer to conclude that Brown had not accepted personal responsibility for his overall criminal conduct. In addition, the PSI Report meticulously summarized defendant's criminal history, comprising nine cognizable prior convictions as well as some other "priors" that could not be considered in the computation because they occurred more than ten years before the offense of conviction or were otherwise eliminated. Defendant's "criminal history score," U.S.S.G. § 4A1.1, including two points which were added because the instant offense had been committed less than two years after defendant's release from imprisonment, see U.S.S.G. § 4A1.1(e), was 20. This score placed Brown in the highest criminal history category (VI). The Report went on to memorialize several pending charges and suggested an upward departure predicated on extensiveness of past criminal conduct and likelihood of recidivism.

At the sentencing hearing, the district court was persuaded that Brown merited the two-point reduction for acceptance of responsibility, lowering his base offense level to 3. The court confirmed that Brown, with a criminal history score of 20, belonged in category VI. Notwithstanding a guideline imprisonment range of 3–9 months, the court sentenced appellant to a 21–month jail term. The court said:

> To protect the public from further crimes of the defendant, the likelihood of recidivism and further criminal behavior must be considered. Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation ... [A]n upward departure is warranted in this case on the basis that the criminal history category significantly under-represents the likelihood that this defendant will commit further crime.

II

Our review of departures consists of three steps. See United States v. Chase, 894 F.2d 488, 490–91 (1st Cir.1990); United States v. Aguilar–Pena, 887 F.2d 347, 350 (1st Cir.1989); United States v. Diaz–Villafane, 874 F.2d 43, 49 (1st Cir.), cert. denied, —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989); see also United States v. White, 893 F.2d 276 (10th Cir.1990) (expressly adopting Diaz–Villafane three-part test); United States v. Joan, 883 F.2d 491, 494–95 (6th Cir.1989) (same). We have described the process in the following way:

> First, we assay the circumstances relied on by the district court in determining that the case is sufficiently "unusual" to warrant departure. That review is essentially plenary: whether or not circumstances are of a kind or degree that they may appropriately be relied upon to justify departure is, we think, a question of law.

> Second, we determine whether the circumstances, if conceptually proper, actually exist in the particular case. That assessment involves factfinding and the trier's determinations may be set aside only for clear error.

Third, once we have assured ourselves that the sentencing court considered circumstances appropriate to the departure equation and that those factors enjoyed adequate record support, the direction and degree of departure must, on appeal, be measured by a standard of reasonableness.

*Diaz–Villafane*, 874 F.2d at 49 (citations omitted). At the final stage, we "defer, within broad limits, to the trial judge's intimate familiarity with the nuances of a given case." *Id.* at 52.

### A

At the threshold, appellant challenges the district court's use of his criminal record as a ground for departure. He argues, in effect, that prior criminality has been taken fully into account in formulating the guidelines and establishing numerically ranked criminal history categories thereunder. It cannot, therefore, bottom a departure from the guidelines. We disagree.

■ To be sure, a case is sufficiently unusual to warrant departure only where "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S. C.A. § 3553(b); *see generally Aguilar– Pena*, 887 F.2d at 349–50. But, this does not mean that every circumstance considered by the Sentencing Commission is automatically excluded from the departure calculus. Even if a circumstance has been considered, a departure may be grounded thereon "if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense of conviction." U.S.S.G. § 5K2.0 (policy statement).

■ We think that, in an appropriate case, a defendant's past criminal history can slip neatly within this integument. After all, the guidelines, though dealing with defendants' previous wrongdoing, do not purport to quantify every possible combination of relevant items. For that reason, the Sentencing Commission itself recog-

nized that where "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range." U.S.S.G. § 4A1.3 (policy statement). In a non-exhaustive listing, the Commission suggested several factors which might warrant such an upward departure: the incidence of prior sentences excluded by the guidelines in the criminal history category computation, U.S.S.G. § 4A1.3(a); the presence of prior convictions that produced sentences of substantially more than a year and resulted from independent crimes, committed on different occasions, U.S.S.G. § 4A1.3(b); and the existence of other pending charges (not yet ripe for inclusion in the guidelines calculation), U.S.S.G. § 4A1.3(d).

■ Moreover, the gradations on the guideline grid are not infinite. The most blameworthy criminal history category is VI; the guideline grid is capped at that level. An offender rates as a "VI" by compiling a score of 13. The guidelines do not differentiate beyond that point: an habitual criminal, who has committed a welter of cognizable crimes, is in category VI, as is one whose history barely adds up to 13. Where, as in this case, the difference between the capped cutoff point and the offender's score is substantial, we see no reason why an upward departure cannot be grounded on that circumstance.

The case at bar falls within these parameters. In departing, the district court noted the fact that "this defendant's criminal history point total of 20 is off the chart ... It is ... more than 50% above the threshold 13 points required for the highest criminal category." The court also remarked the substantial amount of excluded criminal conduct, occurring as early as 1976 and as late as mid–1988. This hall of shame comprised at least a half-dozen additional convictions involving assault and battery, theft, criminal mischief, and disorderly conduct. Finally, the court observed that

Brown faced a myriad of pending charges. These included seven state offenses occurring after the offense of conviction, one committed while Brown was on bail in the present case.

These circumstances, we think, adequately substantiate that defendant had a demonstrated penchant for criminality "to a degree" not fairly accounted for by the guidelines. So notable a criminal history, manifestly underrepresented by the guideline computation, is a sufficiently "unusual" circumstance upon which to ground a departure. *See, e.g., United States v. Jordan,* 890 F.2d 968, 976–77 (7th Cir.1989) (where category VI does not adequately reflect seriousness of past criminal conduct or likelihood that the defendant will commit other crimes, departure is permissible); *Joan,* 883 F.2d at 495 (defendant's violent, dangerous criminal history indicated likelihood of recidivism and therefore justified upward departure); *Diaz–Villafane,* 874 F.2d at 50 (pending charges not taken into account in calculating criminal history category may be considered in departure decision); *United States v. Sturgis,* 869 F.2d 54, 57 (2d Cir.1989) (upward departure warranted where exclusion of defendant's prior state felony convictions significantly underrepresented seriousness of criminal history); *cf. Chase,* at 490–91 (upward departure reasonable where a large number of robberies not adequately taken into account by multiple count adjustment).

### B

In this case, we can take the second and third steps of the process together. Defendant concedes that Brown's oversized criminal history and the nature of the additional charges pending against him were sufficiently documented in the record, thus permitting the departure to clear the second hurdle. Brown does, however, make a stand at the third hurdle, criticizing the extent of the departure.

■ Examining the degree of departure presents a quintessential judgment call. The test, of course, is one of reasonableness. *Diaz–Villafane,* 874 F.2d at 51. Generally, the district court has a greater familiarity with the nooks and crannies of a particular case. Therefore, appellate courts should "not lightly disturb decisions to depart, or not, or related decisions implicating degrees of departure." *Id.* at 50; *see also Chase,* at 491. Given how much Brown's criminal history was underrepresented by the guidelines, we cannot say that the district court's departure was outside the realm of reasonableness. *See generally, Joan,* 883 F.2d at 496 (discussing factors to be considered in assessing reasonableness).

### III

Defendant's final assignment of error posits the unlawfulness of the departure because it was predicated, in part, on an impermissible factor. This contention flows from the district court's mentioning that Brown had been sentenced by the same judge to two years imprisonment for an earlier offense, 17 months of which was actually served. The court commented that, if it were to sentence within the applicable guideline range for the offense of conviction, defendant would be receiving a sentence well below that which had actually been served on the previous occasion.

■ We agree with Brown's premise: a district court cannot depart upward merely because a sentence would be asymmetrical as contrasted with earlier non-guidelines sentences imposed by the same judge. *Cf., e.g., United States v. Williams,* 891 F.2d 962, 967 (1st Cir.1989) ("not every blip on the screen can justify repudiation of the guidelines"); *Aguilar–Pena,* 887 F.2d at 353 (judicial dissatisfaction with a particular sentencing option, "no matter how steeped in real-world wisdom, cannot be enough to trigger departures"); *United States v. Lopez,* 875 F.2d 1124, 1126 (5th Cir.1989) (similar). If district courts were free to ignore the guidelines and conform sentences to their previously-expressed notions of fairness and appropriateness, the floodgate would be open and "Congress's ardent desire to dispense with inequalities based on localized sentencing responses,"

*Aguilar–Pena,* 887 F.2d at 352 (footnote omitted), would be frustrated.

■ Be that as it may, reading the record in realistic context affords insufficient ground to believe that the district court's observation about the comparative severity of the sentences was a basis for its decision to depart. Rather, the remark about the past sentence appears to have been designed simply to underscore the seriousness of the defendant's prior Brobdingnagian criminal record. That the court mentioned the anomaly between its earlier sentence and the guidelines range is not enough reason to make the leap of logic Brown suggests and assume that the court used the rationale as a basis for departure.[1]

### IV

Finding, as we do, that the district court appropriately departed from the guidelines in this case, we affirm the judgment below. The primary ground for departure upon which the court relied—that the applicable criminal history category grossly underrepresented appellant's past criminality—was a legitimate basis for disregarding the guidelines. Because the circumstances (1) were sufficiently unusual to warrant departure, (2) derived adequately from the record, and (3) bore a reasonable relationship to the extent of the departure, we need go no further. The guidelines, after all, "envision[ ] considerable discretion in departure decisions." *Diaz–Villafane,* 874 F.2d at 52.

*Affirmed.*

---

1. This is especially true in that, having decided to depart, the district court could validly consider the deterrent effect of the previous sentence, or lack of any, in gauging how much of a departure would be necessary to accomplish legitimate sentencing goals in respect to the offense of conviction.