**UNITED STATES of America, Appellee,**

v.

**Gilberto OCASIO, a/k/a Gilberto Ocasio Agosto, Defendant, Appellant.**

**No. 90–1146.**

United States Court of Appeals, First Circuit.

Heard July 31, 1990.

Decided Sept. 19, 1990.

Jose Antonio Pagan Nieves, Old San Juan, P.R., by appointment of the Court, for appellant.

Jorge E. Vega–Pacheco, Asst. U.S. Atty., San Juan, P.R., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., was on brief for U.S.

Before CAMPBELL and SELYA, Circuit Judges, and BOWNES, Senior Circuit Judge.

SELYA, Circuit Judge.

Adding yet another rivulet to the recent cascade of criminal sentencing appeals, defendant-appellant Gilberto Ocasio Agosto (Ocasio) asserts that the district court erred not only in computing the applicable guideline sentencing range (GSR) but also in determining the direction and degree of an ensuing departure from the guidelines. We review his contentions.

## I. HOW THE SENTENCE EVENTUATED

Ocasio pled guilty to aiding in the 1989 escape of a federal prisoner, one Orlando Saade–Ballesteros (Saade), from the Rio Piedras State Penitentiary, in violation of 18 U.S.C. § 752(a).[1] The district court undertook to calculate the GSR. *See* U.S.S.G. § 1B1.1 (rev. ed. 1989); *see also United States v. Diaz–Villafane*, 874 F.2d 43, 47–48 (1st Cir.) (explaining method of computation under federal sentencing guidelines), *cert. denied*, — U.S. —, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989); *United States v. Wright*, 873 F.2d 437, 440 (1st Cir.1989) (similar). The court selected the base offense level (13) corresponding to the statute of conviction; declined any role-in-the-offense adjustment; granted a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a); and set the total offense level at 11.

The court then considered defendant's criminal history category (CHC). Ocasio had a lengthy record, dating back to 1973 (when he was 18 years old). A large part of his record involved sentences imposed concurrently for what the guidelines euphemistically call "related cases."[2] As shown in the attached appendix, only four of his 16 convictions were actually counted. Three points were awarded for Offense No. 2, *see* U.S.S.G. § 4A1.1(a) (prescribing 3 points for each prior prison sentence ex-

ceeding 13 months), with no increment for the other three convictions in Group I (Nos. 1, 3 and 4). Three more points were awarded for Offense No. 6, *see id.*, with no increment for its three related cases (Nos. 5, 7 and 8). Another three points were awarded for Offense No. 9, *see id.*, with no increment for six other cases (Nos. 10–15). Two more points were awarded for Offense No. 16, *see* U.S.S.G. § 4A1.1(b) (prescribing 2 points for each prior prison sentence of at least 60 days, not otherwise counted). Two final points were added because defendant, at the time he committed the offense of conviction, was serving, and remained subject to, an ongoing criminal justice sentence. *See* U.S.S.G. § 4A1.1(d); *see generally United States v. Gallego*, 905 F.2d 482 (1st Cir.1990). The resultant total, 13 points, placed Ocasio in category VI (the highest CHC denominated by the guidelines).

Using the grid, the district court determined that the GSR was 27–33 months; overrode defendant's plea for sentencing below the GSR minimum; and departed *sua sponte* in the opposite direction, incarcerating defendant for 60 months (the statutory maximum under 18 U.S.C. § 752(a)), to be followed by a term of supervised release. Ocasio assigns error in three respects. We address his claims sequentially.

## II. ROLE IN THE OFFENSE

We need not linger long over defendant's contention that, since he was a "minor participant" in Saade's escape from Rio Piedras, the district court should have granted him a two-level reduction under U.S.S.G. § 3B1.2(b) (directing two-level decrease if defendant "was a minor participant in any criminal activity"). A defendant has the burden of proving his entitlement to a downward adjustment in the offense level. *See United States v. Ho-*

---

**1.** Saade was recaptured by federal marshals, without incident, inside of a few months.

**2.** *See* U.S.S.G. § 4A1.2, commentary (n. 3) ("Cases are considered related if they (1) occurred on a single occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing."). The

guidelines specifically direct that "[p]rior sentences imposed in related cases are to be treated as one sentence" in computing the CHC, and that "the longest sentence" is to be treated as the sole operative sentence if multiple, concurrent sentences were imposed. U.S.S.G. § 4A1.2(a)(2).

*ward,* 894 F.2d 1085, 1089–90 (9th Cir. 1990); *United States v. McDowell,* 888 F.2d 285, 291 (3d Cir.1989). If disgruntled, the defendant, on appeal, also has the burden of demonstrating that the trial court's role-in-the-offense determination was clearly erroneous. *See Diaz–Villafane,* 874 F.2d at 48; *Wright,* 873 F.2d at 443–44. Ocasio has not satisfied either burden.

It seems plain from the record that Saade's escape likely could not have been consummated without Ocasio's help. Ocasio admitted that, on instructions from a corrupt prison guard who promised him money, he passed Saade off as another inmate, enabling the escapee to gain access to the work detail from which he subsequently absconded. Ocasio also acted as a lookout once the attempt was underway. These were important contributions to the overall plot. That the guard's behavior may have been more reprehensible does not automatically entitle Ocasio to extra credit. Role-in-the-offense adjustments depend, after all, not only on the comparative conduct of persons jointly engaged in criminal activity, but also on comparing each offender's actions and relative culpability with the elements of the offense. *See United States v. Daughtrey,* 874 F.2d 213, 216–17 (4th Cir.1989). In the final analysis, a defendant must be "substantially less culpable than the average participant" before the court must mull the adjustment. *See* U.S.S.G. § 3B1.2, commentary (backg'd).

No useful purpose would be served by belaboring the point. Of necessity, role-in-the-offense assessments are fact-specific, *see id.* (forewarning that minor participant determinations are "heavily dependent upon the facts of the particular case"), a circumstance suggesting that considerable respect be paid to the views of the nisi prius court. In this instance, it would be foolhardy to second-guess the sentencing judge, given his superior coign of vantage. The defendant had a hand in each of the essential elements of the offense of conviction. He assisted Saade's escape in a material manner. It would be hard to say that Ocasio's facilitative conduct was "substantially less culpable" than that of the "average" person who participates in aiding a federal prisoner to escape. Certainly, the district court was not legally required to find Ocasio to be a minor participant. *See, e.g., United States v. Cepeda,* 907 F.2d 11 (1st Cir.1990).

## III.  DOWNWARD DEPARTURE

■ We are without jurisdiction to consider appellant's contention that the district court erred in declining to impose a sentence beneath the GSR floor. In *United States v. Ruiz,* 905 F.2d 499 (1st Cir.1990), we restated the rule: "absent extraordinary circumstances, a criminal defendant cannot ground an appeal on the district court's discretionary decision not to undertake a downward departure from the sentencing range indicated by the guidelines." *Id.* at 508–09; *see also United States v. LaGuardia,* 902 F.2d 1010, 1012 (1st Cir. 1990); *United States v. Jimenez–Otero,* 898 F.2d 813, 815 (1st Cir.1990); *United States v. Pighetti,* 898 F.2d 3, 4–5 (1st Cir.1990); *United States v. Tucker,* 892 F.2d 8, 10 (1st Cir.1989). There is nothing in Ocasio's case which invokes any exception to this rule.

■ To be sure, appellant hawks his post hoc cooperation with the government as a basis for going below the GSR. But, the guidelines forestall any attempt to use an accused's substantial assistance as a springboard for downward departure except in cases where the prosecution has moved for such a dispensation. *See* U.S.S.G. § 5K1.1; *see also LaGuardia,* 902 F.2d 1010. Because no such motion was ever lodged in this instance, Ocasio's claimed assistance to the government cannot command disregard of the GSR. Hence, this reason of appeal is not properly before us.

## IV.  UPWARD DEPARTURE

Defendant's complaint that the district court erred in sentencing him to a term of imprisonment well in excess of the top end of the GSR is not so easily brushed aside. We review this assigned error in accordance with the three-part methodology limned in *Diaz–Villafane:*

First, we assay the circumstances relied on by the district court in determining that the case is sufficiently "unusual" to warrant departure. That review is essentially plenary: whether or not circumstances are of a kind or degree that they may appropriately be relied upon to justify departure is, we think, a question of law.

Second, we determine whether the circumstances, if conceptually proper, actually exist in the particular case. That assessment involves factfinding and the trier's determinations may be set aside only for clear error.

Third, once we have assured ourselves that the sentencing court considered circumstances appropriate to the departure equation and that those factors enjoyed adequate record support, the direction and degree of departure must, on appeal, be measured by a standard of reasonableness.

874 F.2d at 49 (citations omitted). *Accord United States v. White*, 893 F.2d 276, 277 (10th Cir.1990); *United States v. Summers*, 893 F.2d 63, 66–67 (4th Cir.1990); *United States v. Joan*, 883 F.2d 491, 494–95 (6th Cir.1989).

## A

■ Inasmuch as a departure necessitates "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described," 18 U.S.C. § 3553(b), we start with whether the instant case presented "unusual circumstances" sufficient to allow a departure. *See United States v. Aguilar–Pena*, 887 F.2d 347, 350 (1st Cir.1989); *see also United States v. Williams*, 891 F.2d 962, 964 (1st Cir.1989); *Diaz–Villafane*, 874 F.2d at 49. We look first, of course, to what the district court tells us sparked its decision to depart, here the conclusion that: "A departure is warranted because the defendant's criminal history category significantly underrepresents the seriousness of his criminal history."

Appellant's initial attack on this rationale is that the Commission, in constructing the CHC side of the grid, adequately considered past criminality, thereby rendering the court's focus on it inappropriate. The point, however, is foreclosed. The Sentencing Commission foresaw that there might be cases where the CHC failed "adequately [to] reflect the seriousness of the defendant's past criminal conduct," advising courts to consider departing in such cases. *See* U.S.S.G. § 4A1.3 p.s.; *see also id.* (upward departure may be warranted in case involving "egregious, serious criminal record in which even the guideline range for a Category VI criminal history is not adequate to reflect the seriousness of the defendant's criminal history").

We hewed to this line in *United States v. Brown*, 899 F.2d 94 (1st Cir.1990), observing that "the guidelines, though dealing with defendants' previous wrongdoing, do not purport to quantify every possible combination of relevant items," and that, therefore, a defendant's past criminal history, not otherwise adequately accounted for, could afford a suitable basis for departure. *Id.* at 97. Our sister circuits have been consentient in adopting the same rule. *See, e.g., United States v. Gardner*, 905 F.2d 1432, 1434–35 (10th Cir.1990); *United States v. Christoph*, 904 F.2d 1036, 1042 (6th Cir.1990); *United States v. Williams*, 901 F.2d 1394, 1397 (7th Cir.1990); *United States v. Joan*, 883 F.2d at 495.

It is equally beyond cavil that one way in which the CHC's reflection may be distorted is if the related case provisions serve unduly to de-emphasize past criminality in a particular situation. *See* U.S.S.G. § 4A1.2, commentary (n. 3) (the related case definition "is overly broad and will [sometimes] result in a criminal history score that underrepresents the seriousness of the defendant's criminal history"). In such instances, upward departures can be employed to correct imbalances. *See id.; see also United States v. Russell*, 905 F.2d 1450, 1454–55 (10th Cir.1990); *United States v. Roberson*, 872 F.2d 597, 606–07 (5th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989); *cf. United States v. Chase*, 894 F.2d 488, 490–91

(1st Cir.1990) (upward departure available where many robberies not adequately taken into account by multiple count adjustment).

### B

■ Having confirmed that the circumstance which the district court cited can, in a proper case, merit departure, we move to the second prong of the *Diaz–Villafane* inquiry: does the circumstance pertain to Ocasio? There can be no doubt but that appellant's extensive criminal record is a fact of life; he did not effectively challenge the overall accuracy of the litany as presented in the appendix either at sentencing or in his appellate brief. But if his criminal history, though voluminous, was adequately accounted for in compiling the CHC, then the necessary weight-bearing circumstance does not exist.

In this case the arithmetic total of CHC points does not appear fairly to mirror the severity and extent of Ocasio's historic lawlessness. Sheer fortuity, rather than the conscious design of the Sentencing Commission, seemingly led to consolidation of certain charges, involving essentially unrelated crimes committed at widely divergent times. We illustrate briefly.

1. *Group I.* While Offense Nos. 1 and 2 occurred a day apart, and involved the theft of property from the same liquor distributor, the guidelines lumped them as "related cases" with two offenses occurring on completely different dates and involving completely different victims.

2. *Group II.* This grouping bears much the same hallmark; when appellant was sentenced for four crimes on April 23, 1979, only two of the offenses (Nos. 6 and 7) were interconnected in fact. No. 5 antedated the paired offenses by over a year; No. 8 postdated them.

3. *Group III.* The cluster of sentences imposed on September 15, 1985 is cut from similar cloth. Although four offenses were related in fact (Nos. 9, 10, 11 and 12), the remaining three occurred during the following year and had virtually nothing to do with the earlier quartet.

Of course, the mere fact that crimes are haphazardly consolidated for sentencing purposes does not *ipso facto* permit an upward departure. But if essentially unconnected state offenses are lumped together for, say, administrative convenience, without any apparent rhyme or reason in terms of the Sentencing Commission's articulated aims, and the agglomeration thereafter skews the guideline calculus, then a circumstance sufficiently "unusual" to warrant departure may be found to exist.

In this case, the situation is blurred because the lower court has given us no insight into exactly why it believed that the "seriousness" of defendant's record warranted an upward departure. Yet, mindful of the deferential standard of review which obtains, *Diaz–Villafane*, 874 F.2d at 49, the generalized determination that Ocasio's criminal record meaningfully underrepresented the severity and extent of his past criminality, though conclusory, passes muster.[3] For example, with respect to Group I, counting only three points for all four offenses, in combination, might reasonably be thought not to reflect the frequency and repetitiveness of the felonious behavior. Much the same can be said for Group II, as the constituent crimes involved three different robbery attempts. And awarding merely three points for Group III seems at the very least to overlook the repeated smash-and-grab pattern which has dominated Ocasio's adult life. Ocasio's record of criminality was worse than, rather than typical of, the minerun of category VI offenders. The atypicality was both mean-

---

3. Were it not our belief that the particular sentence imposed was unreasonable, *see infra* Part IV(D), we might have had to remand for further findings to explain the degree of departure. *See, e.g., United States v. Todd,* 909 F.2d 395, 396 (9th Cir.1990); *United States v. Ferra,* 900 F.2d 1057, 1061–64 (7th Cir.1990). To avoid squandering scarce judicial resources, we urge the district courts, upon resolving to depart, to make explicit and reasonably detailed findings on each of the three *Diaz–Villafane* prongs. In close cases, where the record may otherwise prove inscrutable, the presence or absence of such findings can make a critical difference.

ingful and substantial. *See generally Williams*, 891 F.2d at 967 (discussing when idiosyncratic circumstances rise to a level sufficient to allow departure). We hold, therefore, that the second *Diaz–Villafane* prong was satisfied in this case.

## C

■ We come now to the final stage of our inquiry, examining the departure's contours "to assess whether the district court ... acted reasonably." *Diaz–Villafane*, 874 F.2d at 51. "This third step involves what is quintessentially a judgment call." *Id.* at 49. Since the trial judge is in the trenches and is apt to be best informed about the offense and the offender, "[w]e will not lightly disturb decisions ... implicating degrees of departure." *Id.* at 50. *Accord Russell*, 905 F.2d at 1456–57.

We start at something of a disadvantage. Generally, a sentencing judge must articulate not only his or her reasons for departing from the GSR, but must also offer a rationale for the degree of departure. *See Gardner*, 905 F.2d at 1437; *United States v. Cervantes*, 878 F.2d 50, 54 (2d Cir.1989); *see generally* 18 U.S.C. § 3553(c)(2) (court must state "specific reason" for its imposition of a particular sentence outside the GSR). The court below offered no such rationale. So little assisted, we are unable to deduce a sound one.

Although some other courts have, from time to time, suggested formulaic approaches to assessing the reasonableness of particular departures,[4] *see, e.g., United States v. Landry*, 903 F.2d 334, 340 (5th Cir.1990) (district court should, if possible, link extent of departure to penalty under most nearly analogous guideline); *United States v. Schmude*, 901 F.2d 555, 560 (7th Cir.1990) (since the guideline range increases roughly 10%–15% from one CHC level to another, sentencing judge should use like increments to guide upward departure as to category VI defendants); *United States v. Pearson*, 900 F.2d 1357, 1361–62 (9th Cir.1990) (similar to *Landry;* favoring analogic approach); *United States v. Kim*, 896 F.2d 678, 684–85 (2d Cir.1990) (in designing upward departure, court should treat the aggravating factor as a separate crime and determine how defendant would fare under the guidelines if convicted of it), we are wary of such pat answers. Reasonableness is a concept, not a constant. The guidelines have cabined the district courts' sentencing discretion to a considerable extent, interposing "a more structured [sentencing] regimen." *Williams*, 891 F.2d at 964. Nevertheless, neither Congress nor the Commission contemplated doing away completely with individualized sentencing. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 150, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3333 (even after Sentencing Reform Act, appellate review of sentences "should preserve the concept that the discretion of a sentencing judge has a proper place in sentencing"); *United States v. Ruiz–Garcia*, 886 F.2d 474, 476–77 (1st Cir.1989) (guidelines not intended to strip all sentencing discretion from district courts). Appreciating, as we do, the unaccustomed limitations surrounding the district courts' discretion, we are reluctant to stifle the modest amount of play remaining in the joints.

Hence, while we agree that a district court may well look to relevant analogies in the guidelines, we continue to reject any bright-line rule that requires a sentencing judge, in essaying an upward departure from category VI, to subrogate his or her residual discretion to some explicit or external criteria. *See Russell*, 905 F.2d at 1456 (rejecting "mechanical extension of the criminal offense categories" as a basis for upward departure from CHC VI); *Diaz–*

---

4. We note that, in most cases where departure is premised on the idea that a defendant's CHC does not fairly represent prior criminality, the Sentencing Commission has directed the district courts to "use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, if applicable." U.S. S.G. § 4A1.3. This rubric is plainly inapposite when, as here, category VI, the highest CHC, is thought to undervalue the seriousness of a defendant's past conduct. *See Gardner,* 905 F.2d at 1438; *see also Brown,* 899 F.2d 94 (applying reasonableness standard to upward departure where category VI underrepresented defendant's criminal history).

*Villafane*, 874 F.2d at 51–52 (warning that departure decisions should neither become "merely a matter of arithmetic" nor deteriorate "into mechanistic bean-counting"); *see also Joan*, 883 F.2d at 496 (in departure context, reasonableness must remain "a flexible standard"). Where valid grounds for departure are present, we will uphold the sentencing judge's resolution of the matter so long as the circumstances warranting the departure, and the departure's direction and extent, are in reasonable balance. *See Russell*, 905 F.2d at 1455–57; *Brown*, 899 F.2d at 98–99; *Diaz–Villafane*, 874 F.2d at 49 ("degree of departure must, on appeal, be measured by a standard of reasonableness") (citing 18 U.S.C. § 3741(e)(2)). To facilitate this inquiry, we suggest in the strongest terms that the sentencing judge explain succinctly the reasons for the degree of departure which he or she utilizes.

### D

■ Applying the reasonableness standard is more difficult than formulating it. Although the guidelines "envision[ ] considerable discretion in departure decisions," *Diaz–Villafane*, 874 F.2d at 52, that discretion is not unbridled. Departures perforce remain "the exception, not the rule." *Aguilar–Pena*, 887 F.2d at 350.

There is no scientifically precise litmus test by which the reasonableness of departure decisions can be resolved. Nonetheless, Congress has specifically instructed that the court of appeals must have regard for the factors ordinarily considered in imposing a criminal sentence. *See* 18 U.S.C. § 3742(e)(3)(A); *see also Gardner*, 905 F.2d at 1435–37 (discussing components of appellate review of reasonableness); *Joan*, 883 F.2d at 496 (offering partial listing of relevant factors). In passing upon the degree of a departure, we, like the sentencing court, must look not only to the particular circumstance warranting departure in the first place, but to the overall aggregate of known circumstances pertaining to the offense of conviction and to the

offender who committed it. Courts cannot become preoccupied with a single tree and thereby lose sight of the forest. *See, e.g., Gardner*, 905 F.2d at 1436 (stressing that degree of departure must attempt, to the extent possible, to maintain the principles of proportionality and uniformity). A judge, having decided to depart for a perfectly legitimate reason, may not proceed to throw away the cornerstones upon which the guidelines rest.[5] *See United States v. Ferra*, 900 F.2d 1057, 1061–62 (7th Cir. 1990).

In the case at bar, the judge, by not explaining his reasons for selecting so stern a degree of departure, has made us uneasy that considerations forming an integral part of the departure calculus, such as proportionality and uniformity, were jettisoned. Insofar as his stated findings are concerned, the judge focused almost exclusively on Ocasio's admittedly Brobdingnagian criminal record and the GSR's failure realistically to account for it. He apparently did not consider, or give weight to, countervailing considerations, including the following:

1. The degree of the departure was extreme. It not only represented a doubling of the GSR's mid-point, but set Ocasio's sentence at the statutory maximum for the offense of conviction.

2. The circumstances of the crime had some mitigating features and, according to the presentence report and the government's brief, no aggravating features. The record clearly reveals that, as a prisoner, Ocasio was in a perilously poor position to refuse the guard's insistence that he abet the escape attempt. While this is not an excusatory circumstance, it is a mitigating one.

3. When an investigation into Saade's escape began, Ocasio promptly came forward, explained his role in the caper, identified the corrupt prison guard, and testified against him at the government's request. Even though such cooperation does not require a downward departure, *see supra*

---

5. We have described these cornerstones as comprising honesty, uniformity, and proportionality

in sentencing. *See Williams*, 891 F.2d at 963–64.

Part III, it should have been considered in fixing the degree of an upward departure. *See, e.g., United States v. Newsome*, 894 F.2d 852, 857 (6th Cir.1990) (in considering whether to depart upward, "the extent of the defendant's post-arrest cooperation is part of the totality of the circumstances" to be examined); *cf. LaGuardia*, 902 F.2d at 1013 n. 4 ("even absent a prosecution motion, the court is free to consider evidence of a defendant's substantial assistance in determining what sentence within the guideline range should be imposed") (emphasis omitted). Such consideration was especially merited in this case, since the assistance entailed appreciable risk.[6]

We need go no further. Taking the broad perspective required by departure jurisprudence convinces us that a mistake has been made. Under the aggregate of the relevant circumstances, the particular sentence imposed was simply not proportionate to the offense of conviction. While some upward deviation would have been permissible in this situation, the extent of the departure essayed by the court below overlooked the totality of the record and was, therefore, unreasonable. *Cf. Inde-pendent Oil & Chemical Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir.1988) (court abuses its discretion when, in making determination, it ignores "material factor[s] deserving significant weight").

## V. CONCLUSION

To recapitulate, we find that the district court appropriately calculated the GSR applicable to appellant's case. Notwithstanding that we lack jurisdiction to hear appellant's plea for a sentence below the GSR, we have jurisdiction to review the court's upward departure. Having done so, we conclude that, although the court correctly identified a supportable basis for departing upward, the degree of departure utilized was unreasonably harsh.

For the reasons discussed, the sentence imposed is vacated and the case remanded to the district court for resentencing. Whether there should be *any* upward departure on resentencing is, of course, a decision to be made afresh by the presider.

*Vacated and remanded.*

## APPENDIX—OCASIO'S CRIMINAL CONVICTIONS

### I. Group I

| No. | Offense Date | Charge | Disposition | CHC Score |
|-----|------|--------|-------------|-----------|
| 1. | 1–29–73 | Robbery (San Juan Superior Court) Case No. G73–352 | 2–22–74: 1–5 yrs imprisonment, concurrent with other sentences imposed this date and with sentence imposed in Guayama Superior Court. | 0 |

The indictment charges that the defendant stole 11 boxes of whiskey.

| 2. | 1–30–73 | Robbery (San Juan Superior Court) Case No. G73–737 | 2–22–74: 2–6 yrs imprisonment, concurrent with other sentences imposed this date and sentence imposed Guayama Superior Court. | 3 |

The indictment charges that the defendant stole a truck containing 525 boxes of whiskey.

| 3. | 8–20–73 | Robbery (San Juan Superior Court) Case No. G73–1384 | 2–22–74: 1–5 yrs imprisonment, concurrent with other sentences imposed this date and sentence imposed in Guayama Superior Court. | 0 |

**6.** The record shows that, after Ocasio agreed to cooperate with the federal authorities, he was badly beaten—a beating which he attributed, without contradiction, to the guards on duty at the state penitentiary. At the sentencing, the prosecutor lent credibility to the defendant's enduring fears, specifically requesting that the court "take into consideration the safety of this defendant when sentence is pronounced and ... that [he] not be turned over to the state authorities at this moment."

| No. | Offense Date | Charge | Disposition | CHC Score |
|-----|--------------|--------|-------------|-----------|

The indictment charges that the defendant stole a 1967 Ford automobile, valued at more than $100.

4. 3–19–73 Breaking and Entering, (Guayama Superior Court) Case No. G73–153 — 2–1–74: 2–6 yrs imprisonment. — 0

The indictment charges that the defendant, and two others, broke into a furniture store, and stole a stereo set.

## II. Group II

5. 10– 7–77 Aggravated Illegal Appropriation (San Juan Superior Court) Case No. G78–3230 — 4–23–79: 1–3 yrs imprisonment, concurrent with other sentences imposed this date. — 0

The indictment charges the defendant with having stolen a 1974 Dodge automobile, valued at $3,000.

6. 11–13–78 Aggravated Breaking and Entering (San Juan Superior Court) Case No. G78–3086 — 4–23–79: 4–8 yrs imprisonment, concurrent with other sentences imposed this date. — 3

The indictment charges that the defendant, intending to steal, broke into a jewelry store.

7. 11–13–78 Possession of Burglary Tools (San Juan Superior Court) Case No. M78–2821 — 4–23–79: 6 mths imprisonment, concurrent with other sentences imposed this date. — 0

The complaint charges that the defendant, intending to commit burglary, possessed a screwdriver and a pair of pressure pliers.

8. 12–28–78 Aggravated Burglary (San Juan Superior Court) Case No. G79–148 — 4–23–79: 4–8 yrs imprisonment, concurrent with other sentences imposed this date. — 0

The indictment charges the defendant with breaking into a jewelry store.

## III. Group III

9. 8–31–84 Attempted Murder (San Juan Superior Court) Case No. G85–20 — 9–17–85: 10 yrs imprisonment, concurrent with other sentences imposed this date. — 3*

The indictment charges that the defendant fired three gunshots at a police officer.

10. 8–31–84 Attempted Illegal Appropriation (San Juan Superior Court) Case No. G85–21 — 9–17–85: 6 yrs imprisonment, concurrent with other sentences imposed this date. — 0

The indictment charges that the defendant attempted to steal a 1979 Ford van, the value of which exceeded $200.

11. 8–31–84 Illegal Transportation of a Firearm (San Juan Superior Court) No. G85–22 — 9–17–85: 10 yrs imprisonment, concurrent with other sentences imposed this date. — 0

The indictment charges that the defendant transported a loaded firearm without having been authorized to do so.

12. 8–31–84 Possession of a Firearm (San Juan Superior Court) Case No. G85–23 — 9–17–85: 10 yrs imprisonment, concurrent with other sentences imposed this date. — 0

The indictment charges that the defendant illegally possessed a firearm, which he used during the attempted murder (see No. 9, *supra*).

13. 5–10–85 Illegal Appropriation (San Juan Superior Court) Case No. M85–829 — 9–17–85: 6 mths imprisonment, concurrent with other sentences imposed this date. — 0

The complaint charges the defendant with having stolen 5 bottles of whiskey, valued at $72.07.

14. 5–30–85 Aggravated Burglary (San Juan Superior Court) Case No. G85–1777 — 9–17–85: 13 yrs imprisonment, concurrent with other sentences imposed this date. — 0*

| No. | Offense Date | Charge | Disposition | CHC Score |
|-----|--------------|--------|-------------|-----------|

The indictment charges that the defendant, accompanied by others, broke into a library, intending to steal.

| 15. | 5-30-85 | Possession of Marijuana (San Juan Superior Court) Case No. G85-2381 | 9-17-85: 5 yrs imprisonment, concurrent with other sentences imposed this date. | 0 |

The indictment charges the defendant with illegal possession of marijuana.

### IV. Miscellaneous

| 16. | 7-31-88 | Attempted Escape (Carolina Superior Court) Case No. M88-650 | 9-15-88: 6 mths imprisonment, consecutive to any other sentences presently being served. | 2 |

The indictment charges the defendant with escape from the Zarzal Prison Camp, Rio Grande, Puerto Rico.

* Although a literal reading of U.S.S.G. § 4A1.2(a)(2) would seem to indicate that the 3 points within Group III should have been allocated to Offense No. 14 ("the longest sentence") as opposed to Offense No. 9, the presentence report made the computation as indicated above. Since in this instance all roads lead to Rome—it makes no practical difference which of these offenses bears the points—we replicate the computation as figured, noting the seeming inconsistency.