UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1619

UNITED STATES OF AMERICA,

Appellee,

v.

CHARLES E. EMERY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Morton A. Brody, U.S. District Judge]

Before

Selya, Circuit Judge,

Friedman,* Senior Circuit Judge,

and Cyr, Circuit Judge.

Robert A. Costantino for appellant.

Margaret D. McGaughey, Assistant United States Attorney,

with whom Richard S. Cohen, United States Attorney, and Raymond

C. Hurley, Assistant United States Attorney, were on brief, for

appellee.

April 28, 1993

*Of the Federal Circuit, sitting by designation.

SELYA, Circuit Judge. This sentencing appeal presents
SELYA, Circuit Judge.

two issues for our determination.1 We must consider (1) whether

an attempted escape from state custody prior to the initiation of

a federal investigation into the offense of conviction can serve

as a basis for enhancing a defendant's sentence under the

obstruction-of-justice guideline, U.S.S.G. 3C1.1; and (2)

whether the facts at bar justify a substantial upward departure

from the guideline sentencing range (GSR). Finding both the

enhancement and the departure to be lawful, we affirm.

I. BACKGROUND

Defendant-appellant Charles E. Emery met Thomas H.

Schmoock when the two men were serving overlapping sentences at

the state penitentiary in Thomaston, Maine. Appellant was

released in late April of 1991 and Schmoock went free a few weeks

later. On May 28, 1991, the pair began executing a complex

check-kiting scheme.

In the scheme's preliminary stage, one of the culprits

posed as an agent of the Internal Revenue Service (IRS) and

solicited information from an unsuspecting dupe, one Thomas E.

Mitchell. Emery and Schmoock used this information to procure a

copy of Mitchell's birth certificate; they used the birth

certificate to obtain a driver's license bearing Mitchell's name

but Emery's photograph; and they used the license to open several

1Except where otherwise indicated, all references are to the
November, 1991 edition of the guidelines, which were in effect at
the time of sentencing. See, e.g., United States v. Harotunian,

920 F.2d 1040, 1041-42 (1st Cir. 1990).

2

checking accounts in Mitchell's name at federally insured banks

in Maine and Massachusetts.

In the scheme's second phase, Emery deposited a number

of forged checks drawn on funds of Lisa and David Holt into the

newly opened accounts.2 He and Schmoock then began kiting checks

in escalating amounts among the three bogus Mitchell accounts.

Fortunately, bank officials soon caught the scent. On June 6,

1991, officers of the Sanford, Maine police department arrested

both men. They promptly attempted to escape from the county

jail, but their escape attempt was no more successful than their

check-kiting swindle.

Although no federal investigation had been mounted to

this point, one followed shortly. On November 21, 1991, a

federal grand jury indicted appellant on a gallimaufry of

charges. He pleaded guilty to impersonation of an IRS agent and

bank fraud. See 18 U.S.C. 912, 1344 (1988 & Supp. II 1990).

At sentencing, the court set the base offense level (BOL) at six,

see U.S.S.G. 2F1.1 (establishing BOL for bank fraud),3 raised

it seven levels because of the dollars in issue, see U.S.S.G.

2F1.1(b)(1)(H) (providing for a seven-level increase if fraud

involves $120,000 or more but less than $200,000), added two

levels because the crime required more than minimal planning, see

2The checks, bearing the imprimatur of a New Hampshire bank,
were blank when stolen from the Holts' home several days earlier.

3Because the impersonation count carried the same BOL, see

U.S.S.G. 2J1.4, it became irrelevant to establishing the
offense level in this multiple-count case. See id.

2J1.4(c)(1).

3

U.S.S.G. 2F1.1(b)(2)(A), added two more levels for obstruction

of justice, see U.S.S.G. 3C1.1, and subtracted two levels for

acceptance of responsibility, see U.S.S.G. 3E1.1. Appellant's

adjusted offense level was, therefore, fifteen.

Under the guidelines, the GSR is determined by plotting

the intersection of two lines: the adjusted offense level and

the defendant's criminal history category (CHC). The CHC is

measured in terms of assigned criminal history points; it ranges

from I (for a person with fewer than two criminal history points)

to VI (for a person with thirteen points or more). See U.S.S.G.

Ch.5, Pt.A (sentencing table). Appellant sported an extensive

criminal history involving an assortment of violent felonies and,

more recently, some less serious peccadillos. His score of

twenty criminal history points surpassed the thirteen points

needed to place him in CHC VI. The GSR was, therefore, forty-one

to fifty- one months. See id. (offense level 15; CHC VI).

Abjuring a sentence within the GSR the district judge departed

upward, imposing an incarcerative sentence of seventy-two months.

In this appeal, appellant bemoans both the obstruction-

of-justice enhancement and the upward departure. We address each

lamentation in turn.

II. OBSTRUCTION OF JUSTICE

Appellant does not challenge the factual basis on which

the district court found an obstruction of justice the

probation officer's report, credited by the district court, made

manifest appellant's attempt to escape from official custody

4

but, instead, posits that conduct otherwise sufficient to

constitute an obstruction of justice under the federal sentencing

guidelines an attempted escape is inoculated against such use

if it occurs prior to the initiation of a federal investigation.

The government seeks to rebut this theorem in three ways. It

avers that the appellant failed properly to preserve the point,

that the decision to depart rendered the obstruction-of-justice

enhancement moot, and that, in any event, the court below acted

within its lawful authority in decreeing the enhancement. We

elect to analyze the point in terms of the prosecution's last two

rebuttal arguments.4

A. Mootness.

We reject the government's asseveration that the upward

departure renders the obstruction-of-justice adjustment moot.

Had the district court eschewed the disputed adjustment, the GSR

would have been thirty-three to forty-one months. See U.S.S.G.

Ch.5, Pt.A (sentencing table) (offense level 13; CHC VI). When

an adjustment in the offense level increases the top end of the

GSR, and an unguided upward departure ensues, the adjustment, at

least potentially, has more than an academic effect on the actual

4We waste no time in regard to the prosecution's attempt to
conjure up a procedural default. Its reasoning in this respect
is premised largely on an extemporaneous suggestion by the
Assistant United States Attorney during the sentencing hearing to
the effect that the federal probe might have started before the
date of the attempted escape a comment which went unanswered by
defense counsel. Having read the record carefully, we are
convinced that the government's waiver claim cannot withstand the
most mild scrutiny. Appellant fully preserved the "no ongoing
federal investigation" point.

5

sentence because the proportionality of the departure to the GSR

is a salient factor to be considered in judging the departure's

reasonableness. See United States v. Ocasio, 914 F.2d 330, 337-

38 (1st Cir. 1990). Accordingly, we rule that a decision to

depart does not, as a general rule, render moot questions

concerning the appropriateness of the calculations underbracing

the district court's computation of the GSR. See United States

v. Mondaine, 956 F.2d 939, 943 (10th Cir. 1992) (holding that a

district court's downward departure under section 4A1.3 did not

moot the defendant's argument that he was entitled to a downward

adjustment in the BOL). Consequently, the adjustment is zoetic,

not moot; and the defendant has standing to protest it in this

appeal.5

B. The Enhancement.

We turn now to the enhancement itself. We do so

mindful that in cases where, as here, an objection to a guideline

enhancement raises a pure question of law, appellate review is

plenary. See United States v. St. Cyr, 977 F.2d 698, 701 (1st

Cir. 1992); United States v. Bell, 953 F.2d 6, 7 (1st Cir. 1992).

We begin with the language of the relevant guideline.

It requires sentencing courts to jack up a defendant's offense

5We recognize, of course, that if the attempted escape from
state custody could not furnish a legally cognizable basis for a
section 3C1.1 adjustment, it might then furnish a springboard for
departing upward. Nevertheless, we are unprepared to say, absent
an express statement by the district court, that if appellant's
legal argument foreclosed the two-level enhancement, the court
would simply have compensated for its inability to ratchet up the
offense level by boosting the ultimate departure sentence to a
corresponding degree.

6

level if "the defendant willfully obstructed or impeded, or

attempted to obstruct or impede, the administration of justice

during the investigation, prosecution, or sentencing of the

instant offense." U.S.S.G. 3C1.1. The commentary to the

guideline makes clear that "escaping or attempting to escape from

custody before trial or sentencing" falls within the definition

of obstructive or impeding conduct. U.S.S.G. 3C1.1, comment.

(n.3(e)). The case law is in the same vein. See United States

v. Amos, 984 F.2d 1067, 1072 (10th Cir. 1993); United States v.

Melton, 970 F.2d 1328, 1335 (4th Cir. 1992).

The slightly more difficult task is defining when

conduct can be said to have occurred "during the investigation .

. . of the instant offense." Appellant theorizes that a

suspect's conduct, no matter how deplorable, cannot obstruct a

non-existent investigation, and that, therefore, if no federal

probe has begun, there can be no obstruction within the

guideline's reach. This argument has a certain superficial

allure, especially because the inclusion of the term "the instant

offense" in section 3C1.1 indicates that there must be some link

between the obstruction and the federal crime for which the

affected defendant is to be sentenced. See generally United

States v. Yates, 973 F.2d 1, 4-5 (1st Cir. 1992).

Be that as it may, several different reasons lead us to

conclude that appellant's argument cannot prevail. In the first

place, the guidelines should be read in a common-sense way.

Doing so here strongly suggests that the provision may be

7

triggered if, notwithstanding the lack of an ongoing federal

investigation, there is a close connection between the

obstructive conduct and the offense of conviction. In this case,

the connection is skin tight: the behavior underlying

appellant's arrest by local gendarmes using false documents to

open a series of bank accounts and withdraw funds to which he had

no lawful claim is the very essence of the offense for which

the district court sentenced him. Since appellant willfully

sought to avoid the consequences of his felonious conduct, it

would be passing strange to reward him merely because he managed

to engineer his attempted escape just before the federal

investigation formally began.

We also believe it is important that appellant's escape

attempt would likely have weighed against him in the pre-

guidelines world. See, e.g., United States v. Fox, 889 F.2d 357,

360-61 (1st Cir. 1989) (explaining that "relevant conduct," such

as that occurring in the course of attempting to avoid detection

or responsibility for an offense, is the sort of conduct "that

courts typically took into account when sentencing prior to the

Guidelines' enactment") (citation and internal quotation marks

omitted); see also United States v. Wise, 976 F.2d 393, 398-99

(8th Cir. 1992) (en banc), cert. denied, 113 S. Ct. 1592 (1993).

We have often recognized that pre-guidelines precedent can have a

definite role in resolving interpretive questions under the

guidelines. See, e.g., United States v. Blanco, 888 F.2d 907,

910 (1st Cir. 1989) (acknowledging that adjustment provisions

8

represent the Sentencing Commission's attempt to tie punishment

to real, rather than charged, conduct, and indicate the

Commission's recognition of the "desirability of emulating

typical pre-Guidelines practice" in this respect). We think this

principle has pertinence in the situation at hand: there is no

reason to assume that the Sentencing Commission intended to

supplant the long-settled praxis of awarding stiffer sentences to

those who defy official custody.

In the third place, the case law supports the district

court's action. The Ninth Circuit has held squarely that

obstructive conduct engaged in during an ongoing state

investigation but prior to the formal initiation of a federal

probe can form the basis of an enhancement under section 3C1.1.

See United States v. Lato, 934 F.2d 1080, 1082-83 (9th Cir.),

cert. denied, 112 S. Ct. 271 (1991). A number of other courts

have apparently adopted this view sub silentio, upholding

obstruction-of-justice enhancements despite the fact that only a

state or local indagation was underway at the time of the

enhancement-producing event. See, e.g., United States v. Dortch,

923 F.2d 629, 632 (8th Cir. 1991); United States v. Rogers, 917

F.2d 165, 168 (5th Cir. 1990) (per curiam), cert. denied, 111 S.

Ct. 1318 (1991); United States v. Roberson, 872 F.2d 597, 609-10

(5th Cir.), cert. denied, 493 U.S. 861 (1989).

Finally, the commentary to the guidelines is hospitable

to the conclusion that we reach today. It refers to attempting

escape "from custody," misleading "a law enforcement officer" and

9

obstructing "an official investigation," U.S.S.G. 3C1.1,

comment. (n.3), without any limitation to federal custody,

federal officers, or official federal investigations. We think

that the Sentencing Commission's repeated employment of generic,

all-encompassing terms is a telltale, indicating how section

3C1.1 should be construed. Cf. United States v. Fiore, 983 F.2d

1, 2 (1st Cir. 1992) (discussing degree of deference due to

Sentencing Commission's view of a guideline provision), cert.

denied, S. Ct. (1993); United States v. Weston, 960 F.2d

212, 219 (1st Cir. 1992) (explaining that application notes and

commentary "are important interpretive aids, entitled to

considerable respect").

In sum, the obstruction-of-justice enhancement rests on

the rationale that "a defendant who commits a crime and then . .

. [makes] an unlawful attempt to avoid responsibility is more

threatening to society and less deserving of leniency than a

defendant who does not so defy" the criminal justice process.

United States v. Dunnigan, 113 S. Ct. 1111, 1118 (1993). The

threat that a defendant poses is not lessened by the happenstance

of fleeing state rather than federal custody, nor is the

defendant's claim to leniency strengthened by that happenstance.

Thus, consistent with the Dunnigan Court's rationale, the

Sentencing Commission's discernible intent, a traditionalist

approach to sentencing, and the weight of authority, we hold that

so long as some official investigation is underway at the time of

the obstructive conduct, the absence of a federal investigation

10

is not an absolute bar to the imposition of a section 3C1.1

enhancement.6 The instant case falls comfortably within the

zone in which such an enhancement is permissible.

III. THE UPWARD DEPARTURE

The second arrow in appellant's quiver targets the

upward departure. We examine such departures within the

tripartite framework erected in United States v. Diaz-Villafane,

874 F.2d 43, 49-50 (1st Cir.), cert. denied, 493 U.S. 862 (1989).

We first review de novo whether the circumstances relied upon by

the sentencing court are, as a legal matter, sufficient to

justify a departure; we then apply clear-error oversight to

determine whether these circumstances, if conceptually proper,

actually exist in the particular case; and, finally, we review

the direction and degree of the departure for reasonableness.

See id. at 49; see also United States v. Trinidad-Lopez, 979 F.2d

249, 252 (1st Cir. 1992); Unite States v. Brown, 899 F.2d 94, 96-

97 (1st Cir. 1990).

Explicitly conceding that the first two prongs of this

test are satisfied here, appellant assails the departure's

6We are aware that one court has held that an obstruction-
of-justice adjustment may lie even if no investigation federal,
state, or local is in progress. See United States v. Barry,

938 F.2d 1327, 1334-35 (D.C. Cir. 1991). Although we need not
reach this question, we view Barry's continued vitality with some

skepticism. For one thing, amendments to the commentary have
deleted much of the language relied upon by the Barry court. See

U.S.S.G. App. C at amend. 347. For another thing, the text of
the obstruction section, on its face, seems to require that some
investigation be underway. See U.S.S.G. 3C1.1; see also United

States v Kirkland, 985 F.2d 535, 537-38 (11th Cir. 1993); United

States v. Luna, 909 F.2d 119, 120 (5th Cir. 1990) (per curiam).

11

magnitude. He contends that the district court failed

sufficiently to justify the degree of its departure and that the

sentence imposed is beyond the bounds of reasonableness. His

contentions are insubstantial.

A. Stating Reasons.

It is true that a sentencing court must provide a

statement of the reasons undergirding a departure from the GSR.

See 18 U.S.C. 3553(c) (1988). Here, however, the lower court

honored the statutory imperative, furnishing three specific

reasons for the departure. It found that (1) there was a great

likelihood of recidivism,7 (2) appellant's record included

several offenses for which he had received no criminal history

points, yet, even so, his criminal history score far outstripped

what was necessary to place him in CHC VI, and (3) appellant's

record also revealed sentences of substantially more than one

year imposed as a result of independent crimes committed on

different occasions. Once the court gave so precise a statement

7Appellant's offhand suggestion that the district court
lacked a factual basis for this conclusion is jejune. The court
supportably found that appellant began planning the offense of
conviction while still in prison and embarked upon it "almost
immediately upon release." The court could reasonably have
believed that so brief an interval between being a prisoner and
implementing a sophisticated crime was a fair indication, under
all the circumstances, that recidivism was a highly likely
eventuality. We discern no clear error in this finding.

12

of reasons, the statute was satisfied.8 We do not think that a

district court must dissect its departure decision, explaining in

mathematical or pseudo-mathematical terms each microscopic choice

made in arriving at the precise sentence. See United States v.

Aymelek, 926 F.2d 64, 70 (1st Cir. 1991); Ocasio, 914 F.2d at

336. To impose such a requirement under the guise of procedural

reasonableness would simply add a layer of unnecessary formality

to the departure equation.9 We flatly reject so auxetic a

notion, preferring to regard reasonableness as "a concept, not a

constant." Ocasio, 914 F.2d at 336.

Let us be perfectly clear. Under the guidelines,

8We note in passing that each of the three circumstances
identified by the court below comprises a permissible basis for
an upward departure. To illustrate, a sentencing court may
consider departing when the CHC "does not adequately reflect the
seriousness of the defendant's past criminal conduct or the
likelihood that the defendant will commit other crimes."
U.S.S.G. 4A1.3. Among the items of "reliable information" that
may indicate the presence of such a situation are the existence
of "prior sentence(s) not used in computing the criminal history
category" and "prior sentence(s) of substantially more than one
year imposed as a result of independent crimes committed on
different occasions." U.S.S.G. 4A1.3(a), (b).

9Of course, we speak in terms of unguided departures.

Section 4A1.3, as it stood at the time appellant was sentenced,
offered no guidance as to the extent of an upward departure based
on the criminal history of a defendant in CHC VI. See Aymelek,

926 F.2d at 70; Ocasio, 914 F.2d at 336 n.4. The operative

guideline has since been amended to indicate that, when a
sentencing court seeks to depart upward from CHC VI, it "should
structure the departure by moving incrementally down the
sentencing table to the next higher offense level in Criminal
History Category VI until it finds a guideline range appropriate
to the case." U.S.S.G. 4A1.3 (Nov. 1992); U.S.S.G. App. C at
amend. 460. However, appellant does not suggest that the
district court should have followed this particular methodology
in applying the pre-amendment version of section 4A1.3. Hence,
we do not consider the question.

13

upward departures carry with them a certain burden to explicate

the decisionmaking process. See Aymelek, 926 F.2d at 70

(observing that a sentencing court must clearly articulate

reasons for the scope of the departure). But when the court has

provided a reasoned justification for its decision to depart, and

that statement constitutes an adequate summary from which an

appellate tribunal can gauge the reasonableness of the

departure's extent, it has no obligation to go further and

attempt to quantify the impact of each incremental factor on the

departure sentence. See id. (ruling that, in reference to

unguided departures, "a sentencing court need not resort at all

to analogies"); Diaz-Villafane, 874 F.2d at 51-52 (questioning

the wisdom of allowing unguided departure decisions to become

mere "matter[s] of arithmetic" or products of "mechanistic bean-

counting").10 Here, the sentencing court's articulated

grounds for departing permit us adequately to assess the

reasonableness of the departure sentence. No more is exigible.

See Williams v. United States, 112 S. Ct. 1112, 1121 (1992)

(stating that in gauging the reasonableness of a departure, a

10While this circuit has explicitly refused to subject the
concept of reasonableness to formulaic constraints, some other
circuits have mandated a more mechanical approach to unguided
departures. See, e.g., United States v. Thomas, 930 F.2d 526,

531 (7th Cir.) ("The sentencing judge is . . . required to
articulate the specific factors justifying the extent of his
departure and to adjust the defendant's sentence by utilizing an
incremental process that quantifies the impact of the factors
considered by the court on defendant's sentence."), cert. denied,

112 S. Ct. 171 (1991); United States v. Lira-Barraza, 941 F.2d

745, 748-50 (9th Cir. 1991) (en banc) (similar). With due
respect for this difference of opinion, we adhere to our circuit
precedent.

14

reviewing tribunal must "look[] to the amount and extent of the

departure in light of the grounds for departing" and to the

purposes of sentencing).

B. Reasonableness.

We move now to a consideration of the reasonableness

vel non of the departure. In this case, the district court hiked

appellant's sentence by twenty-one months, an increase of

approximately 41% over the GSR's ceiling. Considering the

seriousness of appellant's past criminal conduct, the extent to

which his criminal history score exceeded that required for

membership in CHC VI, and the court's supportable finding anent

likely recidivism, we cannot say that the magnitude of this

departure is unreasonable. See, e.g., Brown, 899 F.2d at 96-97

(upholding as reasonable a twelve-month upward departure

representing a 133% increase over the GSR's ceiling); Diaz-

Villafane, 874 F.2d at 51-52 (upholding as reasonable an eighty-

seven month upward departure representing a 264% increase over

the GSR's top end); see also Ocasio, 914 F.2d at 337 (identifying

factors to be considered in reasonableness review).

Appellant's contention that the court below acted

unreasonably because it failed adequately to consider mitigating

circumstances, namely, the chronological sequence and declining

severity of his previous convictions, is utterly unconvincing.

At the sentencing hearing, defense counsel urged the court not to

depart because many of Emery's violent crimes took place in his

youth. The court explicitly responded to this exhortation,

15

stating: "it is true that there has been some sort of hiatus in

the seriousness of the criminal activity, but there is clearly

reason here for upward departure." This is not a case, then, in

which the district court did not consider countervailing

considerations. See Ocasio, 914 F.2d at 337. Rather, the court

focused on the grounds for mitigation but chose not to attach the

weight to them that appellant obviously preferred. This

considered weighing is just the sort of "judgment call" that

should not ordinarily be disturbed in the course of

reasonableness review, Diaz-Villafane, 874 F.2d at 49, especially

when, as now, the ostensibly aggrieved party has given the

appellate court no solid reason to question the trial judge's

calibration of the scales.

We need go no further. The court below plainly

fashioned the sentence with defense counsel's recital of

mitigating circumstances in mind. The end product a twenty-one

month upward departure represented a choice that discounted the

importance of those circumstances but that, nevertheless, came

well within the court's discretion.

Affirmed.

16