**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph N. WILLIAMS,
Defendant–Appellant.**

**No. 89–3084.**

United States Court of Appeals,
Seventh Circuit.

Argued April 19, 1990.

Decided Aug. 27, 1990.

**1576**

Daniel P. Bach, Asst. U.S. Atty., Office of the U.S. Atty., Madison, Wis., for plaintiff-appellee.

Kenneth H. Hanson, Decker & Associates, Chicago, Ill., for defendant-appellant.

Before WOOD, Jr. and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

RIPPLE, Circuit Judge.

This is a direct appeal from a federal criminal conviction. After a jury trial, the appellant, Joseph Williams, was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court sentenced him to 27 months imprisonment, followed by 3 years of supervised release. Mr. Williams filed a timely appeal. For the following reasons, we affirm the judgment of the district court.

## I

### FACTS

Mr. Williams was the subject of an undercover investigation during 1988 and 1989. Paul Harding, an agent with the Bureau of Alcohol, Tobacco & Firearms, met with Mr. Williams on a number of occasions at the bus that Mr. Williams occupied as living quarters. Mr. Williams claimed to Agent Harding that he had no trouble handling a firearm, referred to "his .44," and also described how to manufacture ammunition for a .44 magnum weapon. On April 12, 1989, Agent Harding obtained a search warrant for the bus. The warrant was executed on April 20, 1989. The officers conducting the search discovered a loaded .44 caliber magnum in the lower right hand drawer of a desk located in the bus. Mr. Williams subsequently was indicted for being a felon in possession (on or about April 20, 1989) of a firearm, in violation of 18 U.S.C. § 922(g)(1).

The defendant introduced evidence at trial that the owner of the bus (Henry Yates) was actually the owner of the gun. Yates testified that, during the day on April 19, 1989, he took the gun to an area near the bus and fired at tree stumps. He went into the bus, cleaned the gun, and placed it in the desk while Mr. Williams was not present. He left it there inadvertently and had not removed it by the time the search warrant was executed the next day. Another witness, Phyllis Orlando, testified that she had looked into the drawer the day before the search warrant was executed and did not see a gun.

The government introduced testimony at trial from Agent Harding who said that he met with Mr. Williams over a four month period and that, on January 9, 1989, Mr. Williams told Agent Harding that he had fired .44 magnum guns and that he had no problems firing such guns. On January 18, 1989, Agent Harding again met Mr. Williams at the bus. During this meeting, Mr. Williams told Agent Harding that he could handle .44 magnum guns. Agent Harding testified that the defendant then reached toward the top drawer of the desk and, before actually opening the drawer, turned to Agent Harding and pretended as if he were pulling a trigger on an imaginary gun. They then went to a nearby van. Mr. Williams pointed out bullet holes in the van and claimed that he had fired his .44 magnum into the van.

Agent Harding met once again with Mr. Williams on February 7, 1989. During their conversation Mr. Williams discussed how the .44 magnum operated. He pointed out a bullet hole in the desk that he claimed was an accidental discharge of the gun. At no point during any of these meetings did Mr. Williams actually show a gun to Agent Harding. However, several individuals testified at trial that they did see Mr. Williams in possession of a gun. One wit-

ness, Jonathan Anties, identified a firearm as the one shown to him by Mr. Williams in October 1988. Mr. Anties testified that Mr. Williams removed a .44 magnum from his desk drawer while the two were in Mr. Williams' bus. In addition, Mr. Anties testified that he saw Mr. Williams on 20 to 40 occasions with the firearm in his possession. Other witnesses, including neighbors and friends, testified to seeing Mr. Williams with a .44 magnum firearm during 1988 and 1989.

The jury found Mr. Williams guilty. The district court received the probation office's sentence calculations which indicated a range of 18 to 24 months imprisonment based on an offense level of 9 and a criminal history category of V. The district court departed upward from the guidelines, determining that the criminal history category did not reflect adequately the seriousness of Mr. Williams' past criminality. That particular finding was based, at least in part, on two felony convictions in 1966 and 1967 which were not considered in determining the criminal history category. The district court concluded that the correct criminal history category should be VI and sentenced Mr. Williams to 27 months imprisonment. Mr. Williams filed a timely appeal.

## II

## ANALYSIS

### A. *Sufficiency of the Evidence*

Mr. Williams asserts that the "unimpeached" evidence of his witnesses indicated that Yates owned the firearm and that Yates normally kept the firearm locked in his bedroom. Appellant's Br. at 11. Furthermore, Mr. Williams stresses the story that Yates told at trial: that Yates came into Mr. Williams' bus to use an amateur radio, placed the firearm in a drawer by the radio, and forgot to take the firearm with him when he left. Based on this evidence, Mr. Williams claims that he did not have *knowing* possession of the firearm as required under 18 U.S.C. § 922(g)(1).

A defendant bears a heavy burden when he challenges the sufficiency of evidence. " 'The test is whether after viewing the evidence in the light most favorable to the government, *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " *United States v. Herrero,* 893 F.2d 1512, 1531 (7th Cir.) (quoting *United States v. Pritchard,* 745 F.2d 1112, 1122 (7th Cir.1984) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis supplied by *Jackson* court))), *cert. denied,* — U.S. —, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990). Based on this demanding test, we cannot say that the evidence submitted to the jury made conviction impermissible. The evidence included eyewitness accounts tying Mr. Williams to the firearm and statements made by Mr. Williams to an undercover police officer bragging about owning and firing a .44 magnum. Faced with conflicting stories from a number of witnesses who claimed to see Mr. Williams in possession of the firearm and Mr. Yates' testimony to the contrary, it is quite possible that the jury decided to believe that Mr. Williams possessed the firearm. The evidence supporting such a conclusion is certainly sufficient to support Mr. Williams' conviction under the standard we must apply.

### B. *Upward Departure*

According to the application of the Sentencing Guidelines, Mr. Williams was classified with a criminal history category of V. Combined with his offense level of 9, his sentencing range was 18–24 months. The district court determined that the criminal history category did not reflect adequately the seriousness of Mr. Williams' offenses and his propensity for committing additional crimes in the future. The court therefore increased the criminal history category from V to VI, yielding a sentencing range of 21–27 months. We examine the district court's departure from the Sentencing Guidelines "to determine whether it was reasonable in light of the district court's explanations for its departure at the time of sentencing." *United*

*States v. Gaddy*, 909 F.2d 196, 198 (7th Cir.1990). We review the grounds stated for departure under the *de novo* standard, but accept factual findings supporting the departure unless clearly erroneous. Finally, we must determine whether the amount of departure was reasonable. *Id.* at 198–199; *United States v. Williams*, 901 F.2d 1394, 1396 (7th Cir.1990); *see also United States v. Gardner*, 905 F.2d 1432, 1434 (10th Cir.1990).

The district court decided to depart because, in its view, the criminal history category did "not adequately set forth the criminal history of this Defendant." R.61 at 305. Mr. Williams claims that the departure was erroneous in two respects: the district court should not have considered two convictions that were more than fifteen years old,[1] and the court improperly counted arrests that did not result in conviction.

### 1. General principle: Guideline § 4A1.3

Guideline § 4A1.3 allows the district court to depart from the sentence "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct...." Some types of information, such as arrest records, may not be considered in departing upward. Beyond what may not be considered, the guidelines provide only partial guidance by setting forth a nonexclusive list of what might be "reliable information." The guidelines direct that, after reviewing the evidence of a defendant's past criminality and propensity for future crime, the district court may "conclude that the defendant's criminal history was significantly more serious than that of most defendants in the same criminal history category, and therefore consider an upward departure from the guidelines." Guideline § 4A1.3.

### 2. Convictions more than fifteen years old

The district court took into consideration two felonies—unlawful taking of a motor vehicle and forgery—which were not included in the calculus for determining Mr. Williams' criminal history category because they occurred more than fifteen years prior to the current offense. *See* Guideline § 4A1.2(e)(1). The guidelines provide two ways for the district court to consider the old convictions for purposes of upward departure. First, application note 8 to § 4A1.2 allows the court to consider older convictions "[i]f the government is able to show that [the] sentence ... is evidence of similar misconduct" or that the defendant received a "substantial portion of income from criminal livelihood." *See Gardner*, 905 F.2d at 1435; *United States v. De Luna–Trujillo*, 868 F.2d 122, 124–25 (5th Cir.1989).[2] The sentences involved in this case are not suited for consideration under this rationale, because the two crimes apparently are nonviolent and thus substantially dissimilar to the current conviction (possession of a firearm).

The second way in which the old convictions might be considered is under section 4A1.3 as "reliable information." Dissimilar criminal conduct occurring more than fifteen years prior to the current offense still may be relevant in determining whether the criminal history category underrepresents the defendant's criminality. *Cf. United States v. Carey*, 898 F.2d 642,

---

**1.** Guideline § 4A1.2(e)(1) limits inclusion in the calculation of criminal history to felonies that occurred within fifteen years of the commencement of the currently charged offense. However, application note 8 to that section recognizes that this time limit is not immutable: "If the government is able to show that a sentence imposed outside this time period is evidence of similar misconduct ..., the court may consider this information in determining whether to depart and sentence above the applicable guideline range."

**2.** In a similar case involving possession of a firearm by a felon, the Ninth Circuit determined that the district court correctly increased the criminal history score to account for convictions occurring more than fifteen years prior to the charged crime. The old convictions were for assault with a deadly weapon and assault and battery. "Inasmuch as they show a propensity toward violence and a willingness to use force, these crimes may be viewed as similar to possession of a firearm by a felon." *United States v. Cota–Guerrero*, 907 F.2d 87, 89 (9th Cir.1990).

645–46 & 646 n. 5 (8th Cir.1990) (even when record did not reflect whether old burglary convictions were violent crimes or gun-related, district court properly considered them as "reliable information" under § 4A1.3 to increase criminal history category on defendant convicted under 18 U.S.C. § 922(g)). As our colleagues on the Tenth Circuit recently commented, older convictions may "reflect a defendant who has shown himself to be, in reality, a recidivous criminal." *United States v. Jackson*, 903 F.2d 1313, 1318 (10th Cir.1990) (district court properly referred to, *inter alia*, a twenty-one year old forgery conviction in applying § 4A1.3 to increase criminal history category of defendant convicted of being a felon in possession of ammunition). We conclude that such old convictions may—in appropriate circumstances—be "reliable information" indicating more extensive criminal conduct than otherwise reflected by the criminal history category.

■ Here, the two convictions in question were not the *sole* basis for departure. As we shall discuss more specifically later, the district court considered these convictions along with other aggravating factors that, taken together, required, in the district court's view, an upward departure. We cannot say that consideration of these two convictions as part of an overall assessment of the defendant's criminal background was inappropriate.

### 3. Previous arrests not resulting in conviction

At the sentencing hearing, the district court referred to the presentence report, which included a short discussion of the defendant's past charged criminal conduct that did not result in conviction, and the defendant's objections to the report. In addition, the Assistant United States Attorney presented the court with a copy of the defendant's arrest record.[3]

**3.** The arrests included one for attempted rape and one for assault with a dangerous weapon. According to the presentence report, both charges were dismissed because the complaining witness failed to appear. Mr. Williams filed

■ There is no dispute that a district court may not rely solely upon an arrest record as the basis for an upward departure. *See United States v. Cantu–Dominguez*, 898 F.2d 968, 970–71 (5th Cir.1990); *United States v. Cervantes*, 878 F.2d 50, 55 (2d Cir.1989); Guideline § 4A1.3. Evidence based solely on police records of the arrest is not sufficient to satisfy the "reliable information" requirement. *United States v. Cota–Guerrero*, 907 F.2d at 90 (9th Cir.1990). Nevertheless, the guidelines allow the district court to go beyond the arrest record itself and to consider whether the underlying facts evidence "prior or similar adult conduct not resulting in a criminal conviction." Guideline § 4A1.3(e). Courts have construed this subsection to include charges that were dropped when a witness failed to appear, *United States v. Gayou*, 901 F.2d 746, 748 (9th Cir.1990), charges that were dismissed after the defendant made restitution to the victims, *United States v. Russell*, 905 F.2d 1450, 1455 (10th Cir.1990), and admissions by the defendant that he committed non-charged criminal acts, *United States v. Spraggins*, 868 F.2d 1541, 1544 (11th Cir.1989). The focus of our review upon appeal is whether the evidence of prior conduct is sufficiently trustworthy to be considered "reliable information."

■ The district court in this case specifically articulated the principle that it could *not* base an upward departure solely on the arrest record. However, while relying, at least in part, on the conduct described in the arrest record, it did not state, with any clarity, the factual basis for its reliance. The government notes that two of the arrests—for rape and for assault with a dangerous weapon—are described in the presentence report as having been dismissed because a complaining witness failed to appear. However, even if we assume that this description would be adequate for purposes of consideration under section 4A1.3, the defendant contested the accuracy of

objections to the presentence report claiming that the two charges were each dismissed after the veracity of the complaining witnesses was called into question.

the description. The district court never resolved the disagreement. *See* Fed.R. Crim.P. 32(c)(3)(D). Therefore, we cannot say that, even with respect to these two arrests, the district court relied upon accurate and reliable evidence that the arrests are indicative of a more significant criminal history than reflected by the guidelines. The determination that the arrests indicated similar criminal conduct must be based on facts apart from the arrest record itself and articulated as such by the district court.[4]

### 4. Harmless error

■ It was error for the district court to consider the prior arrests of the defendant that had not resulted in conviction because the court did not rely upon reliable evidence that the conduct described in those arrest entries was indicative of a more severe criminal history. Nevertheless, vacation of the sentence is not necessarily required. This circuit has adopted the rule that a sentence nevertheless may be upheld if there are proper factors that, standing alone, would justify the departure. *See United States v. Franklin*, 902 F.2d 501, 508–09 (7th Cir.1990).[5] Therefore, we shall examine the other factors that the district court considered in deciding to depart upward.

■ In this case, the district court engaged in a searching inquiry into the entirety of Mr. Williams' past criminal conduct. In addition to considering the convictions more than fifteen years old, the court noted that Mr. Williams previously had been convicted of the same crime—felon in possession of a firearm. This court has acknowledged that a previous conviction on the same charge can support a finding that the criminal history category is inadequate. *United States v. Williams*, 901 F.2d 1394, 1398–99 (7th Cir.1990); *United States v.*

*Schmude*, 901 F.2d 555, 559 (7th Cir.1990); *see also United States v. De Luna–Trujillo*, 868 F.2d 122, 124–25 (5th Cir.1989). Moreover, Mr. Williams' propensity for violent crime was indicated by threats he made to the lives of DEA agents and their families. We conclude that, despite the error noted, the court correctly determined that Mr. Williams' criminality was not reflected properly in the criminal history category and that the relevant evidence justified the rather modest increase in sentence.

### C. *Ineffective Assistance of Counsel*

■ Mr. Williams argues that he was denied effective assistance of counsel in four respects. He contends that counsel should have 1) challenged the search warrant; 2) challenged the underlying felony conviction; 3) obtained the criminal records of the government witnesses; and 4) substantiated through ownership records the fact that Yates owned the gun.

■ In order to succeed on a claim of ineffective assistance of counsel, the defendant "must demonstrate that: (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Santos v. Kolb*, 880 F.2d 941, 943 (7th Cir.1989) (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2064–65, 2068, 80 L.Ed.2d 674 (1984)), *cert. denied,* —— U.S. ——, 110 S.Ct. 873, 107 L.Ed.2d 956 (1990). The defendant has the burden of satisfying both prongs of this test. *Shepard v. Lane*, 818 F.2d 615, 619 (7th Cir.), *cert. denied,* 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987).

Mr. Williams' appellate counsel relies exclusively on conclusory allegations of ineffectiveness. For example, the entire dis-

---

**4.** We do not mean by this that the district court must incant a precise formula when discussing prior arrests, *see United States v. Jordan*, 890 F.2d 968, 977 (7th Cir.1989), but we do expect that the district court will articulate precise reasons for concluding that the arrests are "reliable information."

**5.** *See also United States v. Rodriguez*, 882 F.2d 1059, 1066–68 (6th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990). *But see United States v. Zamarripa*, 905 F.2d 337, 339–40 (10th Cir.1990); *United States v. Hernandez–Vasquez*, 884 F.2d 1314, 1315–16 (9th Cir.1989).

cussion of the first two asserted grounds is as follows:

> In the case at bar Trial Counsel did not challenge the Search Warrant, and did not challenge Williams' prior convictions. Had he successfully challenged either of these 2 points the conviction of the defendant could not be sustained. To convict a defendant of *knowingly* receiving a firearm, which had been shipped in interstate commerce, after being convicted of a crime punishable by imprisonment in excess of one year, the prior conviction must be constitutionally valid.

Appellants Br. at 12–13. The brief does make reference to a document filed by Mr. Williams in the district court that details his assertions of ineffectiveness. Nevertheless, a more plenary discussion by counsel of the allegations in the context of the *Strickland* test is required.

Neither counsel's conclusory statements in the brief nor Mr. Williams' allegations in his document demonstrate that, *but for* the alleged errors by trial counsel, there is a "reasonable probability" that Mr. Williams would have been acquitted. On the basis of this record, we also are not convinced that trial counsel's performance fell below an objective standard of reasonableness. Mr. Williams presents no argument to explain how challenging the search warrant could have been successful in this case. Counsel is not required to make perfunctory motions with no basis of support in the record. Since appellate counsel suggests no such basis, it is impossible for this court to conclude that trial counsel was unreasonable in not making the motion at trial. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (because of the difficulty of evaluating trial decisions, court should be highly deferential when reviewing charges of deficient performance). We conclude, therefore, that Mr. Williams has failed to meet his burden of demonstrating ineffective assistance of counsel.

Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.