UNITED STATES of America, Appellee,

v.

James Owen MOORE,
Defendant, Appellant.

No. 90–2226.

United States Court of Appeals,
First Circuit.

Heard April 4, 1991.
Decided April 23, 1991.

---

**4**

Rubin G. Segal, Portland, Me., argued, for defendant, appellant.

Nicholas M. Gess, Asst. U.S. Atty., Portland, Me., with whom Richard S. Cohen, U.S. Atty., Augusta, Me., and F. Mark Terison, Asst. U.S. Atty., Portland, Me., were on brief, for the U.S.

PER CURIAM.

This is a single issue criminal appeal wherein defendant-appellant James Owen Moore assigns error to the district court's resort to an upward departure in formulating Moore's sentence. We affirm.

On September 18, 1990, Moore pled guilty to three counts charging possession of stolen mail (viz., United States Treasury checks) in violation of 18 U.S.C. § 1708. A presentence report was ordered. After considering objections to it, the court fixed the net offense level at 4 and the defendant's criminal history category (CHC) at V. These calculations (to which no party objects on appeal) resulted in a guideline sentencing range (GSR) of 4–10 months.

The district court departed upward, sentencing Moore to 16 months in prison. The court made particularized findings and stated its reasons for departing in meticulous detail. To summarize, the court noted that, while defendant had received a criminal history score (CHS) of 10, placing him in CHC V, no fewer than 23 other potential CHS points were, for a variety of reasons, not included in the CHC computation. Some convictions, for example, were screened out because they were remote in time, *see, e.g.,* U.S.S.G. § 4A1.2(e)(2), and

others were excluded because they had culminated in short sentences, *see* U.S.S.G. § 4A1.1(c). The court supportably found, however, that several of these convictions evidenced "similar misconduct" and that others "reveal[ed] the same sort of dishonesty and misappropriation of other people's property" as characterized the offenses for which Moore stood in the dock. Accordingly, the court ruled that it had a right to consider both sets of "similar" convictions; that, based on them, CHC V gravely underrepresented Moore's past criminality; and that, considering his record, "th[e] defendant has a severe likelihood of repeating his criminal behavior that is not adequately reflected" in the CHS or the GSR. Deciding, therefore, that a departure was appropriate, the court went on to make specific findings as to the proper extent of the departure to be utilized (explaining, for example, why moving to CHC VI would "still fail[ ] to reflect adequately either the seriousness of the defendant's criminal history or the likely recidivism").

This case, we believe, is close to a textbook model for departure jurisprudence. The court below made detailed findings, adequately anchored in the record. It articulated and applied the proper methodology, first established in *United States v. Diaz–Villafane,* 874 F.2d 43, 49 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). It isolated and identified a set of circumstances sufficiently "unusual" to warrant departure. *See, e.g., United States v. Aymelek,* 926 F.2d 64, 72–73 (1st Cir.1991); *United States v. Ocasio,* 914 F.2d 330, 334–35 (1st Cir.1990); *United States v. Brown,* 899 F.2d 94, 97 (1st Cir.1990).[1] It then determined that those circumstances actually existed in

---

1. Although we have ruled that remote convictions, not countable toward a defendant's CHS, can support an upward departure, *see Aymelek,* at 72–73, we are aware that the Supreme Court has recently granted certiorari in a case involving, *inter alia,* much the same point. *See United States v. Williams,* 910 F.2d 1574 (7th Cir.1990), *cert. granted,* —— U.S. ——, 111 S.Ct. 1305, 113 L.Ed.2d 240 (1991). We do not stay our hand, however. Not only do we believe that our precedent is correct, but more importantly, this

case (which, unlike *Williams,* involves remote convictions for conduct *similar* to the offense of conviction) is unlikely to fall within the compass of the Court's opinion. *See* U.S.S.G. § 4A1.2, comment. (n. 8) ("If the government is able to show that a sentence imposed outside [the time limits] is evidence of similar misconduct ... the court may consider this information in determining whether to depart and sentence above the applicable guideline range.").

Moore's case.[2] Finally, the court took care in measuring the actual departure, "explain[ing] succinctly the reasons for the degree of departure," *Ocasio*, 914 F.2d at 337, and offering a well-thought-out rationale for the sentence imposed. The judge, in short, appears to have considered and weighed all the relevant factors and reached a reasonable resolution. No more was required.[3]

We need go no further. We have said before, and today reaffirm, that in those comparatively few cases where a departure from the GSR is warranted, the emphasis should be on ascertaining that the sentence actually imposed was "fair and reasonable." *Aymelek*, at 70. We are satisfied that the standard was fully met in this case and that Moore's sentence was neither disproportionate nor unlawful.

*The conviction and sentence are affirmed.*

**2.** Indeed, the existence of the multitudinous prior convictions was not contested below, and is conceded on appeal.

**3.** At oral argument, appellant's counsel emphasized that many of the prior convictions, taken individually, were small potatoes. In the main, that is so. But, taken in the aggregate, they show a pervasive pattern of recurrent dishonesty, completely supportive of the trial court's conclusions anent recidivism. *See Aymelek*, at 73; *cf.* H. More, *Sensibility* ("trifles make the sum of human things, and half of our misery from our foibles springs").