UNITED STATES of America, Plaintiff–Appellee,

v.

David D. LAWSON, Defendant–Appellant.

No. 90–3479.

United States Court of Appeals, Seventh Circuit.

Argued July 10, 1991.

Decided Nov. 14, 1991.

Andrew B. Baker, Jr., Asst. U.S. Atty. (argued), Office of the U.S. Atty., Dyer, Ind., and William T. Grimmer, Asst. U.S. Atty., Office of the U.S. Atty., South Bend, Ind., for plaintiff-appellee.

Charlie Coon (argued), and Allen E. Shoenberger, Loyola Law School, Chicago, Ill., for defendant-appellant.

Before CUDAHY and EASTERBROOK, Circuit Judges, and PELL, Senior Circuit Judge.

CUDAHY, Circuit Judge.

David D. Lawson pleaded guilty to one count of conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846. Lawson appeals from his sentence imposed under the United States Sentencing Guidelines (U.S.S.G.). Lawson challenges the three-level increase in his offense level for his aggravating role as a manager or supervisor pursuant to U.S.S.G. section 3B1.1(b). He also contends that he was denied the effective assistance of counsel. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

In 1983, Lawson's brother, Harold, got him started in the marijuana business. Harold, who lived in Texas, would procure marijuana from various suppliers and Lawson would travel to Texas and transport the marijuana back to Indiana. Lawson would then distribute the marijuana to others. Lawson solicited one person to accompany him on the trips to Texas. Lawson also introduced Brian Thompson and Kerry Goodpaster to the business after their repeated entreaties to join the operation.

In 1988, Lawson began training Thompson to take his place in transporting the marijuana. Lawson continued, however, to control its distribution. On February 8, 1988, law enforcement officials searched Thompson's residence and seized 163 pounds of marijuana that had come from

the Lawsons. Law enforcement officials also searched Lawson's van, which was parked at Thompson's residence, and seized the 513 pounds of marijuana that were in it. In February of 1989, Lawson and Goodpaster were arrested in Mississippi while delivering 200 pounds of marijuana from Harold in Texas.

In January through March of 1990, Thompson made five trips to Texas. Before each trip, Lawson gave Thompson money, a total of $80,000, which he in turn gave to Harold in exchange for a total of 202 pounds of marijuana. Lawson directed Thompson when to make these trips, where he was to go and how he was to get there. It was Lawson who paid Thompson his stipend of $2000 per trip. Once in Texas, Thompson took his directions from Harold. Harold reimbursed Thompson for his incidental expenses.

On May 26, 1990, while en route to Indiana, Thompson was involved in an automobile accident. The police discovered sixty pounds of marijuana and arrested Thompson. Thompson agreed to cooperate with the authorities and make a controlled delivery of the marijuana to Lawson. Lawson picked Thompson up in his van. After the agents overheard Thompson explain about the accident and Lawson inquire if all the marijuana had been removed from the car, they stopped the van and arrested Lawson.

Lawson was charged in a ten-count indictment with possession with intent to distribute a controlled substance, conspiracy to possess with intent to distribute marijuana and traveling and causing another person to travel in interstate commerce in connection with an unlawful activity. Counsel filed a motion to suppress the 513 pounds of marijuana seized from Lawson's van during the 1988 search of Thompson's residence. Before argument on that motion was heard, counsel reached a plea agreement with the government. Consequently, the scheduled hearing on the motion to suppress became the change of plea hearing. The court conducted a plea colloquy pursuant to Federal Rule of Criminal Procedure 11, and Lawson entered his plea of guilty. The court, however, deferred acceptance of the plea since the agreement provided for a sentencing cap of 78 months.

After the plea hearing, but before sentencing, Lawson sent a letter *pro se* to the district court. Lawson expressed concern that counsel had not secured the best deal possible. Lawson also indicated that he had received the plea agreement only minutes before the change of plea hearing and signed it because he feared the maximum penalty. Lawson stated that he felt counsel had not spent enough time with him in discussing his defense. The court did not respond to this letter.

At sentencing, both parties objected to including the 513 pounds of marijuana seized from Lawson's van, and the court sustained the objection. The court thus based Lawson's offense level on the 202 pounds of marijuana Thompson had transported from January through March of 1990, the 200 pounds of marijuana that Lawson and Goodpaster were arrested with in Mississippi and the 163 pounds seized from Thompson's residence. This gave Lawson an offense level of 26. The court then found that Lawson played an aggravating role in the conspiracy as a manager or supervisor in "criminal activity [that] involved five or more participants or was otherwise extensive"; consequently, the court increased the offense level by three pursuant to section 3B1.1(b). The court gave Lawson a two-level reduction for acceptance of responsibility. This gave Lawson an offense level of 27 and a corresponding sentencing range of 70 to 87 months. The court then sentenced Lawson to 70 months' imprisonment to be followed by a four-year period of supervised release. Lawson then filed a timely notice of appeal.

## II.  CASE LAW & ANALYSIS

### A.  *Aggravating Role as a Manager or Supervisor—U.S.S.G. Section 3B1.1(b)*

Lawson contends that the district court's finding that he played a managerial or supervisory role in the operation was clearly erroneous. A sentencing court's finding that a defendant played a manage-

rial or supervisory role in the offense is one of fact and is subject to a "clearly erroneous" standard of review. *See United States v. Brown,* 900 F.2d 1098, 1101 (7th Cir.1990). A finding of fact is clearly erroneous "if, after reviewing all the evidence, the appellate court is left 'with the definite and firm conviction that a mistake has been committed.'" *See id.* at 1102 (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). In making this determination, the district court must draw inferences from a variety of sources including information in the presentence report and the defendant's statements and demeanor at the sentencing hearing. *See United States v. Herrera,* 878 F.2d 997, 1000 (7th Cir.1989).

■ A review of the record leads us to conclude that the district court's finding was not clearly erroneous. Although it was Thompson who sought to join the conspiracy, as opposed to Lawson's having recruited him, Lawson exercised the authority to let him join and testified that he had the authority to let others into "the chain" without having to consult with Harold or anyone else. Lawson then trained Thompson to take his place. Once Thompson began making the drug runs to Texas, Lawson directed his activities in Indiana. Lawson argues that he did not initiate the orders, but was simply an intermediary who communicated them to Thompson and others. Lawson's attempt to minimize his actions as those of a mere "intermediary" is unpersuasive. Lawson was in a position of trust as Harold's contact in Indiana. When Thompson arrived in Indiana with the marijuana, he delivered it to Lawson, who then doled it out to the distributors. Lawson also handled large sums of "buy" money which he gave to Thompson to take to Texas. As the district court aptly noted, the fact that Lawson was supervised by Harold does not disprove his supervisory role as to Thompson. The district court's view of the evidence was not clearly erroneous.

### B. *Ineffective Assistance of Counsel*

Lawson next contends that he was denied the effective assistance of counsel. Specifically, he contends that counsel did not adequately consult with him about various developments in his case and failed to object to the inclusion of certain quantities of marijuana which increased his offense level.

■ We review Lawson's ineffective assistance claim under the familiar two-part test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, Lawson must show that "counsel's representation fell below an objective standard of reasonableness." *See id.* at 687–88, 104 S.Ct. at 2064–65. Our review of counsel's performance must be highly deferential and we must avoid the temptation to second-guess counsel. *See id.* at 689, 104 S.Ct. at 2065. Second, Lawson must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 694, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

■ First Lawson contends that counsel was ineffective in that he failed to keep Lawson informed of developments in his case. Lawson is apparently alluding to counsel's alleged failure to inform him that he had negotiated a plea agreement with the government. Lawson's statements to the court at the plea hearing are to the contrary. Lawson told the court that he was satisfied with counsel's representation and had reviewed the plea agreement. "The record that is created by these questions [in the Rule 11 hearing] is accorded ... a 'presumption of verity.'" *United States v. Ellison,* 835 F.2d 687, 693 (7th Cir.1987) (quoting *Key v. United States,* 806 F.2d 133, 136 (7th Cir.1988)). Even if Lawson's allegation is true, Lawson cannot carry his burden of showing prejudice. Lawson does not suggest that, if counsel had presented the agreement to him sooner, he would have rejected it and insisted on going to trial, but simply asserts that

the plea agreement "probably would have been different."[1] This is insufficient to show prejudice. *See Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985) (Petitioner must show that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). Lawson's allegations are insufficient to show that counsel's performance fell below an objective standard of reasonableness or that he was prejudiced.

■ Second Lawson contends that counsel was ineffective in that he failed to object to the inclusion of certain quantities of marijuana. The problem with Lawson's argument is that he has not suggested that there is any factual basis upon which counsel could have relied in mounting such a challenge. Conclusory allegations of ineffective assistance are insufficient to satisfy a defendant's burden of showing cause. *See United States v. Williams,* 910 F.2d 1574, 1580–81 (7th Cir.1990), *cert. granted,* ―― U.S. ――, 111 S.Ct. 1305, 113 L.Ed.2d 240 (1991). We also note that counsel does not render ineffective assistance by failing to pursue arguments that are clearly destined to prove unsuccessful, *see United States v. Madewell,* 917 F.2d 301, 305 (7th Cir.1990), or by strategically choosing to pursue his client's strongest arguments and to forego marginal ones. *See Goins v. Lane,* 787 F.2d 248, 254 (7th Cir.), *cert. denied,* 479 U.S. 846, 107 S.Ct. 165, 93 L.Ed.2d 103 (1986). Counsel did challenge the 513 pounds of marijuana that were found in Lawson's van and was successful in having that amount excluded from the computation. That he did not

also challenge the other amounts did not amount to deficient performance.

Even if counsel had challenged these amounts, we cannot conclude that there is a reasonable probability that the result of the sentencing hearing would have been different. In determining the amount of drugs that were involved in a conspiracy, a sentencing court may consider any conduct that is "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2); *see United States v. Salva,* 902 F.2d 483, 488 (7th Cir.1990). The government need only provide evidence of this conduct that satisfies a preponderance of the evidence standard. *See United States v. White,* 888 F.2d 490, 499 (7th Cir.1989). The record in this case shows that this burden was readily met. As for the 202 pounds, Thompson's statements in cooperating with the authorities provided sufficient evidence for this amount to be included. As for the 200 pounds Lawson and Goodpaster were arrested with, the arrest records are sufficient evidence of this quantity. As for the 163 pounds seized from Thompson's residence, even if counsel had successfully challenged this amount, it would not matter because this additional amount would not have put Lawson in the next higher range of drug quantities. Lawson has failed to establish cause or prejudice.

■ Lawson also complains that the district court did not inquire into the concerns he expressed in his *pro se* letter to the court about counsel's effectiveness. Although it would have been better for the

1. After oral argument, Lawson filed a letter informing the court that if the case were to be remanded, Lawson would then seek to vacate his guilty plea. This letter is in apparent reference to Lawson's claim that trial counsel was ineffective in his handling of the plea agreement. It does not, however, change our analysis. At argument, the court asked counsel whether there was any indication that Lawson wanted to withdraw his plea. Lawson's post-argument letter purports to change the answer given at argument, which was implicitly a roundabout "No," but the statement that Lawson would now seek to vacate his guilty plea on remand is not the same as an allegation that, but for counsel's actions, he would have rejected the plea and insisted on going to trial. Nor does it change our discussion regarding the district court's handling of the *pro se* letter Lawson sent to the district court. We note our difficulty with cases such as this in which a claim of ineffective assistance of trial counsel is raised on direct appeal and the record is not developed as to this issue. To raise an ineffective assistance claim on direct appeal is often a disservice to the defendant because resolution of this issue on appeal may well preclude the defendant from later developing a record and presenting the issue in a proceeding pursuant to 28 U.S.C. § 2255. That may be the case here, and Lawson's after-the-fact, after-oral-argument statement that he would seek to vacate his guilty plea on remand does not change the outcome.

district court to address this letter, its failure to do so was not a critical error. The district court could have construed the letter as a motion to withdraw the guilty plea; however, the letter did not suggest any grounds that would provide a sufficient basis for allowing Lawson to withdraw the plea. That Lawson thought counsel could have negotiated a better plea does not necessarily bear on whether the plea was knowing and voluntary. *See United States v. Savage*, 891 F.2d 145, 151 (7th Cir.1989) (disappointment with sentence is not sufficient reason to permit defendant to withdraw plea). As discussed above, Lawson's responses during the Rule 11 colloquy are inconsistent with his claim of ineffective assistance. It is also noteworthy that Lawson claims that he signed for fear of the maximum penalty, but this does not make his plea involuntary. *See Brady v. United States*, 397 U.S. 742, 746–47, 90 S.Ct. 1463, 1467–68, 25 L.Ed.2d 747 (1970); *cf. Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Thus, it appears that even had the district court acknowledged Lawson's letter and conducted an evidentiary hearing, Lawson could not have carried his heavy burden. *See Ellison*, 835 F.2d at 643.

## III. CONCLUSION

For these reasons, the judgment of the district court is

AFFIRMED.