**UNITED STATES of America, Plaintiff,**

**v.**

**Kevin GEIGER, Defendant.**

**Nos. 92 C 4750, 90 Cr 463.**

United States District Court,
N.D. Illinois, E.D.

March 24, 1994.

---

Keven Geiger, pro se.

### OPINION AND ORDER

NORGLE, District Judge:

Before the court is Kevin Geiger's ("Geiger") *pro se* petition pursuant to 28 U.S.C. § 2255. For the reasons that follow, the court denies the petition.

### FACTS

Geiger was charged with participation in a cocaine distribution conspiracy in violation of 21 U.S.C. § 846, and using a telephone to facilitate a narcotics trafficking crime in violation of 21 U.S.C. § 843(b). On May 16, 1990, eight defendants, namely Geiger, Victor Plescia ("Plescia"), Frank Bonavolante, Nicholas Rizzato ("Rizzato"), Camile Gross, Anthony Grossi, Norman Demma, and Dena Plescia, were indicted. Geiger, Rizzato, and Dena Plescia pleaded guilty before trial, and the remaining five defendants went to trial on the second superseding indictment. The court utilized a two-jury procedure, and even then, the trial lasted through July and August, 1991.

Between 1986 and 1990 the defendants were members of a large scale cocaine distribution organization and conspiracy. The source of the cocaine was Colombia, from where it was delivered to Florida, and picked up in quantities of five to ten kilograms for distribution in the Chicago area. In excess of fifty kilograms was ultimately distributed. The five defendants who went to trial were convicted and were heavily sentenced under the sentencing guidelines. Rizzato, the government's cooperating witness, also received a substantial sentence.

On July 2, 1991, Geiger executed a written plea agreement and entered a voluntary plea of guilty to count I of the second superseding indictment which charged him with participation in the conspiracy to distribute cocaine. Geiger admitted, both in his plea agreement and guilty plea, that for a period of approximately four years he was a mem-

ber of a narcotics distribution ring along with Plescia, Rizzato, and the others. P.A. at 2; 7/21/91 Tr. at 9–12. Geiger admitted that, as a member of the distribution ring, he procured cocaine from Plescia and other members of the ring and then sold the cocaine to customers. P.A. at 2; 7/2/91 Tr. at 10–11. Geiger further admitted that he received cocaine from Plescia through Rizzato. P.A. at 2; 7/2/91 Tr. at 10–11. Geiger admitted that he obtained one to three ounce quantities of cocaine from Plescia, and that the aggregate amount of the cocaine that Geiger obtained from Plescia over the course of the conspiracy was at least 3.5 kilograms but no more than 5.0 kilograms. P.A. at 2–3; 7/2/91 Tr. at 11.

At the January 16, 1992 sentencing hearing, the court classified Geiger within criminal history category I, pursuant to U.S.S.G. § 4B1.1. In light of his admitted involvement with 3.5 to 5.0 kilograms of cocaine, the court affixed Geiger's base offense level ("BOL") at level thirty pursuant to U.S.S.G. § 2D1.1(c). The court then agreed to a two level reduction in Geiger's BOL pursuant to U.S.S.G. § 3E1.1 for his acceptance of responsibility for the conspiracy to distribute narcotics. This calculation resulted in a BOL of twenty-eight and a corresponding sentence range of seventy-eight to ninety-seven months imprisonment. The court sentenced Geiger to seventy-eight months incarceration, the low-end of the guideline range. The court subsequently granted the government's motion to dismiss all charges against Geiger contained in the original indictment and the first superseding indictment, as well as the remaining counts contained in the second superseding indictment. Geiger did not appeal his sentence or the validity of his guilty plea.

On July 21, 1992, Geiger filed a *pro se* petition pursuant to 28 U.S.C. § 2255, raising four issues. Geiger asserts that (1) his guilty plea was coerced by the government; (2) his due process rights were violated; (3) he was deprived of the opportunity to review the presentence investigation report ("PSI") with counsel and, as such, was precluded from identifying factual inaccuracies in the PSI; and, (4) he was denied his right to effective

assistance of counsel. Geiger seeks an order declaring his sentence to be in violation of the Constitution of the United States and thus granting him immediate release from federal custody and in the alternative, an order reducing his BOL in consideration for his alleged minor involvement in the conspiracy which would reduce his sentence correspondingly.

### DISCUSSION

■■■ The applicable legal framework for evaluating a petition pursuant to 28 U.S.C. § 2255 is well settled. As a general rule, Geiger's failure to raise issues on direct appeal bars him from raising them in a post conviction proceeding. *United States v. Taglia*, 922 F.2d 413, 418 (7th Cir.), *cert denied*, 500 U.S. 927, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991); *Norris v. United States*, 687 F.2d 899, 900 (7th Cir.1982). Nevertheless, Geiger may raise these issues if he can demonstrate cause for his failure to appeal as well as resulting prejudice. *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594–95, 71 L.Ed.2d 816 (1982); *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992). Geiger waived his right to raise the first three issues alleged in his § 2255 petition because he failed to challenge those assertions on direct appeal and made no effort to show cause for such failure or resulting prejudice. *See Oliver v. United States*, 961 F.2d 1339, 1341 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 469, 121 L.Ed.2d 376 (1992).

■■■ Even if Geiger had not waived these issues, the court finds them to be without merit. A § 2255 petition may be dismissed in a summary fashion if the record conclusively demonstrates that the petitioner is not entitled to relief. *United States v. Kovic*, 830 F.2d 680, 692 (7th Cir.1987), *cert. denied*, 484 U.S. 1044, 108 S.Ct. 778, 98 L.Ed.2d 864 (1988); *Key v. United States*, 806 F.2d 133, 137 (7th Cir.1986). No hearing is necessary if the petitioner's allegations are mere conclusions or are inherently unreliable. *United States v. Trussel*, 961 F.2d 685, 689 (7th Cir.1992) (quoting *United States v. Fountain*, 777 F.2d 351, 358 (7th Cir.1985), *cert.*

*denied,* 475 U.S. 1029, 106 S.Ct. 1232, 89 L.Ed.2d 341 (1986)).

▇ In his first claim, Geiger asserts that both his attorney, Terrance LeFevour ("LeFevour"), and the prosecutor unlawfully coerced Geiger to plead guilty. Specifically, Geiger claims that both LeFevour and the prosecutor "threatened" to charge him with possession and distribution of a quantity of drugs "for which he could not have reasonably foreseen." Pet. at 3. Geiger contends that both the prosecutor and LeFevour suggested that he plead guilty to being involved with 3.5 to 5.0 kilograms of cocaine or be faced with prosecution "for being involved with several hundred kilograms of cocaine." *Id.* at 6. Geiger asserts that this "threat" induced him into pleading guilty. *Id.* Geiger contends that his plea was thus involuntary and constitutionally defective.

Geiger's first claim is unsupported and conclusory. Geiger merely states that both LeFevour and the prosecutor told him to plead guilty under the plea agreement. Geiger has offered no evidence outside of the trial record which would require the court to conduct an evidentiary hearing.

Moreover, at Geiger's plea hearing on July 2, 1991, the court specifically asked him; "Have any threats been made against you?" Geiger replied in the negative. The court followed this question by asking "Are you being compelled to do this in any way?" Again, Geiger replied in the negative. The court then asked Geiger specifically whether "this is your free and voluntary act?" Geiger answered "Yes." The court's review of the record indicates that no evidentiary hearing is necessary to determine that Geiger is not entitled to relief on this claim.

▇ Geiger next claims that his due process rights were violated. Specifically, he claims that "it was not foreseeable to him that he was in any way involved in a major conspiracy involving hundreds of kilograms of cocaine—as he was nothing more than a 'user.'" Pet. at 3. Geiger asserts that his "minimal involvement in the purchase and use of the drugs should have entitled him to finding that he was not involved in a larger conspiracy," *id.,* and that "his present sentence does not take into account the fact that there may have been a 'lesser' conspiracy of drug users—of which this defendant was, in fact, a member." Pet. at 4. Geiger merely states that he has always denied being a retailer or "street dealer" and had no knowledge of a "major conspiracy" involving hundreds of kilograms of cocaine. This argument is devoid of any merit and is unsupported by the record. During Geiger's hearing on July 2, 1991 the court asked him whether he agreed with the facts upon which he was pleading guilty. Geiger answered affirmatively. These facts included Geiger's admission to being part of a narcotics distribution ring as a retail seller and to obtaining at least 3.5 kilograms, but not more than 5.0 kilograms of cocaine. The sentencing hearing was therefore fair and in compliance with due process.

Geiger's third claim alleges that he "was deprived of his opportunity to review the PSI with his counsel and was deprived of the opportunity to point out factual inaccuracies in the PSI or call them to the attention of the court." Pet. at 4. Geiger thus asserts that the court relied on inaccurate information in determining his sentence, and that he "was deprived the opportunity to offer evidence to show that he was not a member of the conspiracy which was charged in the indictment." *Id.*

▇ Geiger's claim that the district court relied on inaccurate information in sentencing him, without giving him an opportunity to the correct the information, is a cognizable claim under § 2255. See *Johnson v. United States,* 805 F.2d 1284, 1287 (7th Cir. 1986), see also *Blake v. United States,* 841 F.2d 203, 205 (7th Cir.1988); *Kovic,* 830 F.2d at 685 n. 11. Although Geiger makes a general conclusory allegation that the "judge relied on inaccurate information in sentencing this defendant," he does not specify what the inaccurate information was, except to say that "[t]he government's statement, standing alone, that the defendant was involved in at least 3.5 kilograms but not more than 5.0 kilograms ... is both hearsay-on-hearsay and unreliable." Pet. at 4. Geiger has failed to demonstrate that the PSI contained any inaccurate statements or that any misinfor-

mation "so infected his sentencing hearing, that it resulted in a fundamental miscarriage of justice." *Kovic,* 830 F.2d at 685. Geiger admitted to at least 3.5 kilograms, but no more than 5.0 kilograms, in his plea agreement. Geiger acknowledges in his petition that he spoke with LeFevour regarding the terms and content of his plea agreement. Pet. at 14. n. 10. Geiger also admitted that he met with LeFevour three or four times regarding the plea agreement and had read and understood such agreement prior to its execution. Further, the evidence of the amount of cocaine involved in this case was based on the testimony of Rizzato.

Geiger's fourth and final argument is that he was deprived of his Sixth Amendment right to effective assistance of counsel at all the critical stages of the criminal proceedings. Geiger claims that (1) LeFevour did not provide Geiger with an opportunity to review his PSI; (2) Geiger was deprived an opportunity to seek a review of factual inconsistencies between "his version and the government's version" of the PSI; (3) LeFevour failed to seek a reduction in Geiger's BOL for his minimal or minor role in the conspiracy; (4) LeFevour did not demand or question the government's proof as to either the computation of the quantity of cocaine allegedly foreseeable to Geiger, or the method of proof used by the government to establish a quantity for the purpose of imposing a sentence; (5) LeFevour instructed Geiger to say "yes" to all the questions put forth by the court or he would not "get the deal"; (6) LeFevour had a duty to protest factual inaccuracies of his PSI and to argue for a downward adjustment in his sentence because of Geiger's lack of involvement; (7) after he pled guilty LeFevour informed him that he would do nothing for Geiger in the way of post conviction relief; (8) there was a conflict of interest between LeFevour's financial interest in the case and his actual representation of Geiger; and (10) his sentence was erroneously calculated under U.S.S.G. 3B1.1(a) and that LeFevour was ineffective in preventing this erroneous calculation.

■ A denial of Geiger's Sixth Amendment right to effective assistance of counsel may excuse his failure to directly appeal his guilty plea or sentence. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); *Velarde v. United States,* 972 F.2d 826, 827 (7th Cir.1992). The United States Supreme Court, in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), addressed the question of what constitutes ineffective assistance of counsel. Under the two pronged test outlined in *Strickland,* Geiger must establish that LeFevour's performance was deficient and that this deficient performance prejudiced Geiger's defense or sentencing hearing. *Id.* at 687, 104 S.Ct. at 2064. LeFevour is presumed to have provided effective assistance and Geiger bears a heavy burden in proving that LeFevour was ineffective and that his defense was actually prejudiced as a result. *United States v. Booker,* 981 F.2d 289, 292 (7th Cir.1992). In this case, Geiger has failed to demonstrate that LeFevour's performance fell below an "objective standard of reasonableness based on prevailing professional norms" and was therefore deficient. *Id.* 466 U.S. at 688, 104 S.Ct. at 2064. Geiger also failed to demonstrate that LeFevour's performance rendered the outcome of the proceedings unreliable or fundamentally unfair. *Lockhart v. Fretwell,* —— U.S. ——, ——, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993); see also *Strickland,* 466 U.S. at 487, 104 S.Ct. at 1952.

■ Geiger first asserts that LeFevour deprived him of an opportunity to review his PSI. This contention is not supported by the record. Under 18 U.S.C.A. § 3552(d), a PSI must be furnished to the defendant, the defendant's counsel, and the prosecuting attorney at least ten days prior to the sentencing date, unless this minimum period is waived. A defendant may waive that period by failing to assert his rights at the appropriate time. *United States v. Busche,* 915 F.2d 1150, 1151 (7th Cir.1990). Answering questions by the court during his sentencing hearing on January 16, 1992, Geiger stated that he had read the PSI and made no objection to it. Geiger also admitted in his petition that, prior to the sentencing hearing, he was contacted by LeFevour to discuss the content of the PSI. If Geiger believed that the suggested BOL of thirty was inaccurate,

he was obligated under Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure to inform the court of any error in the PSI prior to, or at, the sentencing hearing. When given the opportunity to challenge the report by the court, Geiger declined. By failing to raise his objections in a timely fashion, he has waived the right to object to the PSI now. *United States v. Stout*, 882 F.2d 270, 272 n. 3 (7th Cir.1989); *United States v. Atehortua*, 875 F.2d 149, 151 (7th Cir.1989).

■ Geiger next asserts that he was deprived of an opportunity to seek a review of factual inconsistencies between his version and the government's version of the PSI. This assertion is also not supported by the record. Geiger was given ample opportunity to augment and challenge his PSI prior to sentencing as discussed above. Moreover, Geiger had discussed the plea bargain agreement with LeFevour on three or four occasions. The court also asked Geiger whether he had had "enough time to discuss all the issues" with LeFevour, to which Geiger responded affirmatively. The court further asked whether Geiger knew what he was doing and whether he was "clear minded" on the morning of the plea. Again, Geiger responded affirmatively to both inquiries. Thus, Geiger had a full opportunity to object to any problems with the PSI, including the government's version of the facts.

■ Geiger next contends that LeFevour failed to seek a reduction in Geiger's BOL based on what Geiger contends was his minimal or minor role in the conspiracy. Specifically, Geiger argues that his BOL should have been no more than a level twenty, which would have produced a sentencing range of twenty-seven to thirty-three months. LeFevour's failure to seek a further reduction in Geiger's BOL does not constitute ineffective assistance of counsel. The Constitution does not ensure that a defense attorney will be a great negotiator or will obtain the best plea bargain available. *United States v. Springs*, 988 F.2d 746, 749 (7th Cir.1993). Additionally, "counsel does not render ineffective assistance of counsel by failing to pursue arguments that are clearly destined to prove unsuccessful, ... or

by strategically choosing to pursue his client's strongest argument and forego marginal ones." *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1505, 117 L.Ed.2d 643 (1992). The record reveals that Geiger met with LeFevour three or four times prior to executing the plea bargain agreement. Geiger's plea to a lesser charge, combined with his acceptance of responsibility, reduced his BOL to twenty-eight and resulted in the dismissal of the remaining criminal charges. The court, therefore, cannot conclude that LeFevour's tactical decision not to seek further reductions in Geiger's BOL constituted deficient representation or resulted in prejudice to Geiger's defense in this matter.

■ Geiger next claims that LeFevour did not demand or question the government's proof as to either the computation of the quantity of cocaine allegedly foreseeable to Geiger, or the method of proof used by the government to establish a quantity for the purpose of imposing a sentence. The decision by LeFevour not to challenge either was eminently correct because a reasonable factfinder may have concluded that Geiger was responsible for possessing and distributing more than 5.0 kilograms of cocaine during the course of the conspiracy. This is particularly true given that the evidence of the amount of cocaine attributable to Geiger was based on the previously obtained testimony of Rizzato, and there existed no other factual basis upon which LeFevour could have relied in mounting a challenge against either the government's computation or method of proof.

Also, counsel is not ineffective merely because he fails to object to the quantity of controlled substance used for calculating a defendant's sentence if there is no factual basis upon which counsel could have relied in mounting a challenge and no reasonable probability the challenge would produce a more favorable result. *Lawson*, 947 F.2d at 853. Geiger admitted, in his written plea agreement and guilty plea, that during the course of the conspiracy he obtained one to three ounce quantities of cocaine from Plescia, and that the aggregate amount of the cocaine that Geiger obtained from Plescia

over the course of the conspiracy was at least 3.5 kilograms but no more than 5.0 kilograms. P.A. at 2–3; 7/2/91 Tr. at 11. Therefore, there is no reasonable probability that the outcome of this case would have been different had LeFevour questioned the government's proof as to either the computation of the quantity of cocaine allegedly foreseeable to Geiger, or the method of proof used by the government.

■ Geiger next asserts that LeFevour's conduct in instructing Geiger "to say 'yes' to all the questions put forth by the court or he would not 'get the deal' " constituted ineffective assistance of counsel. The court finds Geiger's allegation frivolous and without merit. The record is void of any evidence that LeFevour's advice to Geiger regarding his guilty plea was deficient or that LeFevour's performance prejudiced Geiger's defense in any manner. The record also demonstrates that the court conducted a thorough examination at the hearing, taking careful and appropriate measures to dispel any confusion on Geiger's part before his plea was accepted in order to ensure that he understood his rights and made a voluntary choice in executing the plea agreement.

Geiger next contends that LeFevour had a duty to protest factual inaccuracies of his PSI and should have argued for downward departure from the sentencing guideline range for his lack of involvement in the conspiracy. This claim also lacks merit. The record shows that Geiger's minimal involvement in the conspiracy was the primary motivation for the party's agreement to stipulate that the amount of cocaine reasonably foreseeable to Geiger during the course of the conspiracy was at least 3.5 kilograms but less than 5.0 kilograms of cocaine. The conspiracy alleged in the indictment is greater than that amount of cocaine. In fact, the grand jury alleged a conspiracy in excess of fifty kilograms of cocaine. Thus, Geiger has failed to show that LeFevour's failure to protest the alleged inaccuracies constituted deficient performance under *Strickland* and that this alleged deficiency prejudiced Geiger's defense.

■ Geiger also asserts that LeFevour informed him that he would do nothing for Geiger in the way of post conviction relief. The court finds this allegation frivolous. Geiger's allegations of what LeFevour may have said regarding representation of Geiger in post conviction proceedings is immaterial as to whether Geiger received effective assistance of counsel in prior proceedings. The court refuses to consider such claim within the context of this petition.

■ Geiger next asserts that there was a conflict of interest between LeFevour's financial interest in the case and his representation of Geiger. This claim also lacks merit. Geiger cites *Whitaker v. Warden, Md. Penitentiary,* 362 F.2d 838 (4th Cir.1966) for the proposition that "an attorney's solemn duty is to faithfully represent his client's interest and that duty is breached when the attorney serves an interest that conflicts with that of his client." Although the court agrees with this proposition of law, it does not concur with Geiger's suggested application of such proposition to the case at bar. The record is devoid of any evidence that LeFevour was at any time serving an interest other than Geiger's or that any interest of LeFevour may have been in conflict with his representation of Geiger.

Geiger finally contends that his sentence was erroneously calculated under U.S.S.G. § 3B1.1(a) and that LeFevour was ineffective in preventing this erroneous calculation. The court rejects Geiger's challenge. The record reveals that there was no error in the BOL calculation and Geiger has offered no evidence or proof to the contrary. At Geiger's sentencing hearing on January 16, 1992, the court classified Geiger within criminal history category I, pursuant to U.S.S.G. § 4B1.1. This determination was based on the fact that Geiger had no previous criminal history points. The court then established a BOL based on Geiger's admitted involvement with 3.5 to 5.0 kilograms of cocaine pursuant to U.S.S.G. § 2D1.1(c). The court also agreed to a two level reduction in Geiger's BOL pursuant to U.S.S.G. § 3E1.1 for Geiger's acceptance of responsibility for his criminal conduct. Because this sentence was not erroneous, LeFevour was not ineffective in failing to object to the calculation.

*CONCLUSION*

For all of the above stated reasons, the court denies Geiger's § 2255 petition.

IT IS SO ORDERED.